UNITED STATES, Appellee

v.

James R. MATIAS, Specialist Four U.S. Army, Appellant.

No. 55,105.

CM 446048.

U.S. Court of Military Appeals.

Dec. 23, 1987.

Certiorari Denied March 21, 1988. See 108 S.Ct. 1242.

For Appellant: *Thomas R. Matias, Esq.* (argued); *Captain Kevin Sugg* (on brief); *Captain David L. Carrier.*

For Appellee: *Captain Vito A. Clementi* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Samuel J. Rob* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During April 1984, appellant was tried by general court-martial composed of officer members at Fort Lewis, Washington. Contrary to his pleas, he was found guilty of conspiracy to distribute marijuana and distribution of marijuana on October 18, 1983, as well as conspiracy to possess and distribute cocaine, and possession of cocaine with intent to distribute on November 15,

1983, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934, respectively. He was sentenced to a bad-conduct discharge, 2 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved, and the Court of Military Review affirmed, the findings and sentence. 21 M.J. 1002 (1986).

We granted appellant's petition for review to consider seven issues:

## I

WHETHER THERE IS ANY EVIDENCE TO SUPPORT THE MARIJUANA CONVICTIONS SINCE THE GOVERNMENT'S CHIEF WITNESS WAS FOUND TO BE A CHRONIC LIAR.

## II

WHETHER THE COURT BELOW RELIED ON A MISREPRESENTATION OF THE RECORD IN FINDING EVIDENCE OF CONSPIRATORIAL INTENT; THE COURT HAS COMMITTED GRIEVOUS ERROR BY EXTRA-RECORD SPECULATION.

## III

WHETHER THE FINDINGS BELOW ON COCAINE ISSUES ARE SUPPORTED BY THE RECORD; CONCLUSIONS BY THE COURT BELOW ARE BASED ON SPECULATION.

## IV

WHETHER THE COURT'S ABBREVIATED REVIEW ADDRESSED DEFENSE CONTENTIONS ON MOST ISSUES; THE DETERMINATIONS REACHED ON THOSE ISSUES ARE NOT SUPPORTED BY THE RECORD OR PRECEDENT.

## V

WHETHER THE COURT BELOW ERRED IN APPLYING THE LAW ON CONSPIRACY ISSUES.

## VI

WHETHER THE COURT BELOW ERRED BY REFUSING TO TAKE JUDICIAL NOTICE OF ITS OWN RECORDS.

## VII

WHETHER THE REVIEW BELOW IS A SOURCE OF PREJUDICE.

Basically, appellant challenges the sufficiency of the evidence to support the findings of guilty against him and lambasts the Court of Military Review for its factual and legal review in this case. Upon consideration of the briefs, the record, and the arguments of counsel, we conclude that the findings of guilty and the sentence should be upheld.

The court below found the following facts concerning this case:

On 18 October 1983 Military Police Investigator George P. Case and [a confidential informer, PFC] Eaves went to purchase marijuana at an off-post residence located near Fort Lewis, Washington. The residence was shared by Specialist Four Steven R. Todhunter, Specialist Four Charles W. Geisel and appellant. When they arrived, Geisel allowed them to enter. Appellant was in bed at the time. Eaves went to appellant's bedroom to get him to sell the marijuana. Appellant refused to get out of bed, saying he was too tired and that Geisel could "take care of it." Geisel initially did not want to participate in the transaction and he and appellant had a brief argument over the matter. Geisel eventually relented and, upon learning from appellant that the marijuana was under a desk in Todhunter's bedroom, obtained the marijuana and offered to sell it for $250.00. Appellant, still in his bedroom while the other parties were in the living room, told Geisel it was not worth his time to sell the marijuana for $250.00 and that he wanted $280.00 and no less because he needed the money to repair his car.

The transaction was completed and the purchasers departed.

On 15 November 1983, pursuant to a prearranged plan to purchase a half pound of marijuana from Todhunter, Investigator Case and Deputy Sheriff Debra Simcoe, a civilian undercover agent, went to the same residence. Present were Todhunter, Eaves, Curtis A. Kinloc[h] (a civilian drug dealer), and appellant. Todhunter stated that he did not have the marijuana but Kinloc[h] offered to obtain a half ounce of cocaine for the agents. Everyone then left the house except appellant, the undercover agents ostensibly to obtain additional funds and the dealers to secure the cocaine. The agents returned before the dealers. Case asked appellant what were his chances of getting the cocaine. Appellant said, "a hundred percent" and that he had called and had it all arranged. (The statement seems to be boastful talk by appellant. Todhunter and Kinloc[h] appeared to have made the arrangements for the cocaine.) Then the telephone rang, appellant answered, and told the agents that Kinloc[h] did not want to come in because he had seen police cars in the neighborhood. Appellant and Eaves went outside to determine whether the house was under surveillance. After deciding that it was, appellant tried to discourage Kinloc[h] and Theodore F. Suepke (another civilian drug supplier) from completing the transaction, but Eaves urged them to continue. Eventually, everyone returned to the house, where Suepke produced the cocaine. Appellant weighed it and made several remarks about its amount, quality and appearance. Simcoe activated a concealed beeper that signaled the civilian police outside. Simcoe and Case then drew their weapons and apprehended everyone while the police broke through the front door.

21 M.J. at 1004.

### I

■■■ The first issue challenges appellant's conviction for conspiracy to distribute marijuana and distribution of marijuana on October 18, 1983. Appellant claims that his court-martial and the Court of Military Review erroneously based their findings of guilty for these offenses on the testimony of "a chronic liar." *See* 21 M.J. at 1003. He asserts that as a matter of law, the testimony of such a person must be independently corroborated if it is to be afforded "any weight" in sustaining a conviction. He also asserts that no such corroborative evidence appears in this record, and therefore, the record is legally insufficient to support his conviction.

The Army court's characterization of PFC Eaves, the informant-witness, reflects evidence questioning his reputation for truthfulness in the community and considerable other evidence which tended to undermine his credibility. Eaves was not an outstanding soldier, and a number of members of his unit testified that they would not believe him under oath. Moreover, on cross-examination he himself admitted that he believed that his wife had had an affair with appellant.

Nevertheless, Eaves was not found incompetent to testify by the military judge. *See* Mil.R.Evid. 601 and 104(a), Manual for Courts-Martial, United States, 1969 (Revised edition). Therefore, his credibility was a question to be resolved by the members under appropriate instructions, and they were so instructed. *See* para. 74(a)(2), Manual, *supra.* There is no additional legal requirement that the testimony of a competent witness who is also generally regarded as a "liar" be corroborated.[1] *Cf. United States v. Diaz,* 22 U.S.C.M.A. 52, 56–57, 46 C.M.R. 52, 56–57 (1972); *United*

---

1. Case, a military police investigator, did corroborate Eaves' testimony that a marijuana purchase occurred on the above date in a house in which appellant resided. He did not observe appellant's participation in this transaction, but he offered a reason for his failure to do so. This is not a situation of "no corroboration whatsoever," as contended by appellate defense counsel.

*States v. Kelker*, 50 C.M.R. 410 (A.C.M.R. 1975). Accordingly, the evidence of record was not legally insufficient on this basis. *See United States v. Hart*, 25 M.J. 143, 146 (C.M.A.1987).[2]

## II

■ Appellant next argues that the Court of Military Review engaged in "extra-record speculation" to affirm his conviction for conspiracy to distribute cocaine on November 15, 1983. He specifically objects to the following portion of that court's opinion:

> Everyone then left the house except appellant, the undercover agents ostensibly to obtain additional funds and the dealers to secure the cocaine. The agents returned before the dealers. *Case asked appellant what were his chances of getting the cocaine. Appellant said, "a hundred percent" and that he had called and had it all arranged. (The statement seems to be boastful talk by appellant. Todhunter and Kinloc[h] appeared to have made the arrangements for the cocaine.)*

21 M.J. at 1004 (emphasis added); and later where that court said:

> With regard to the drug transaction on 15 November 1983, *the evidence of appellant's complicity as a co-conspirator began to emerge when he informed the undercover agent that the agent had a "hundred percent" chance of purchasing a quantity of cocaine because he (appellant) had made some sort of arrangement to obtain the substance. This statement might not have been factual but it does establish appellant's inclination to engage in drug activities.*

*Id.* at 1005 (emphasis added).

Appellant contends that the court below erred in reading the evidence of record

because the civilian, Kinloch, was the "he" referred to by Case in his testimony rather than appellant. Accordingly, the court's use of this testimony to show appellant's complicity in the cocaine offense was unjustified.

We note that the challenged reading of the record of trial is justified if this portion of the record is viewed in isolation.[3] Trial defense counsel made no effort to clarify any ambiguity in Case's testimony by cross-examination at trial. We also note that this reading of the record was first proferred by the staff judge advocate in his post-trial review. Trial defense counsel again did not object to the staff judge advocate's opinion in this matter. Also, the Court of Military Review did not consider this evidence as an admission by appellant of his arrangement of the cocaine deal but rather considered it for the limited purpose of showing his predisposition to participate in it. Finally, accepting the reading of the record of trial proffered by appellate defense counsel, we conclude that it supports an equally damaging inference that appellant knew about past drug transactions of Kinloch, and he was particularly aware that the charged transaction was in progress.[4] In light of the above, any error committed by the court below in reading this record was harmless. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

## III

■ Appellant also asserts that the findings of guilty for these cocaine offenses were not otherwise supported by evidence of record. He complains that the Court of Military Review's conclusions of fact supporting these findings were based on judicial speculation.

The court stated in this connection:

> And we were just there a few minutes, and I asked Matias what my chances were of getting the coke, and he said a hundred percent considering he called and had it all arranged.

---

2. The testimony of Eaves and Case together also provides ample support for the finding below that appellant directed Geisel to the marihuana in the desk and told Geisel that a higher price was needed to repair his car.

3. Q. What happened when you got back to the house?
   A. Todhunter was gone, and myself, Debbie, and the CI returned, and Matias was there.

4. Appellant testified that he had no discussions with people in his house about drugs. Eaves also testified to other incidents which showed appellant's predisposition to distribute drugs.

With regard to the drug transaction on 15 November 1983, the evidence of appellant's complicity as a co-conspirator began to emerge when he informed the undercover agent that the agent had a "hundred percent" chance of purchasing a quantity of cocaine because he (appellant) had made some sort of arrangement to obtain the substance. This statement might not have been factual but it does establish appellant's inclination to engage in drug activities. *His complicity developed further when he surveyed the neighborhood to ascertain for the other dealers whether there were police officers in the area.* True, appellant might have abandoned the conspiracy when he discovered the police surveillance, and we shall give him the benefit of the doubt, but he rejoined the conspiracy at the urging of the confidential informant. *Appellant's acts of weighing the cocaine and promoting its sale amply proved his participation in a criminal conspiracy* to distribute cocaine and the substantive offense of possession of cocaine with intent to distribute.

21 M.J. at 1005 (emphasis added; footnote omitted).

With the exception previously noted, we conclude that there is evidence of record which would permit a rational trier of fact to draw these conclusions beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Harper,* 22 M.J. 157 (C.M.A.1986). The presence of countervailing evidence in the record which could have been disbelieved by the members does not alter our conclusion. *See United States v. Ford,* 23 M.J. 331, 334 (C.M.A.1987); *United States v. Williams,* 21 M.J. 360 (C.M.A. 1986).

### IV

■ Appellant also asserts that the Court of Military Review erred by not specifically addressing in its written opinion many of his assignments of error. No provision in the Uniform Rules of Practice and Procedure for the Courts of Military Review; Rules for Courts-Martial (R.C.M.), Manual for Courts-Martial, United States, 1984; or Article 66, UCMJ, 10 U.S.C. § 866, requires such written opinions. *See* Rules 15 and 18 *Rules of Practice and Procedure,* Courts of Military Review, 22 M.J. CXXXII and CXXXIV; R.C.M. 1203; *United States v. Hurt,* 9 U.S.C.M.A. 735, 756, 27 C.M.R. 3, 24 (1958). The opinion below notes that the court considered those assignments of error and found them to be without merit.[5] *See* 21 M.J. at 1005. We have considered these assigned errors as well and find only one which deserves extended comment before denying relief on these grounds.[6]

### V

■ Appellant also contends that the Court of Military Review misapplied the law of conspiracy to the evidence of record. He claims that no prior agreement to com-

---

**5.** Those errors included an assertion that appellant was entrapped into committing the offenses; that the military judge erred in his instructions on the law of possession of cocaine with intent to distribute; that the Government failed to sufficiently establish the chain-of-custody of the cocaine seized on November 15, 1983; that appellant was denied a speedy trial; and that he was denied military due process generally. We accept the analysis below on the entrapment issue, find no legal error on the possession charge, and find the speedy-trial and military-due-process claims insufficient as a matter of law.

**6.** We need not determine whether the Government established a sufficient chain-of-custody to show that the cocaine seized from appellant by Deputy Sheriff Simcoe was that introduced at trial. Evidence was admitted that appellant and other participants in this transaction described the seized substance as cocaine and that it weighed 16 grams, more or less, as alleged in the specification. Moreover, Deputy Sheriff Simcoe conducted a field test of the substance immediately upon its seizure. She testified that the reagent showed a positive reaction for cocaine salts. Simcoe's testimony as to the results of the field test has not been challenged at any level of this case. The Government's evidence, taken together, was sufficient to allow the members to find that appellant possessed about 16 grams of cocaine as charged. *United States v. Day,* 20 M.J. 213 (C.M.A.1985); *United States v. Tyler,* 17 M.J. 381 (C.M.A.1984); *United States v. White,* 9 M.J. 168, 170 (C.M.A.1980).

mit either of the offenses was shown in his case as required by this law.

In *United States v. Jackson,* 20 M.J. 68, 69 (C.M.A.1985), we reiterated the long-standing principle of law that a conspiracy need not take any "particular form or be manifested in any formal words." In fact, the existence of a conspiracy is generally established by circumstantial evidence and is usually manifested by the conduct of the parties themselves. *United States v. Jacobs,* 451 F.2d 530, 535 (5th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). The agreement need not be expressed but need only be implied to sustain a finding of guilty.

▊ As to the initial sale of marijuana on October 18, 1983, appellant's argument assumes that the illegal agreement must have preceded the actual sale. Eaves testified that he had earlier arranged a marijuana purchase from appellant alone. However, a conspiracy may be contemporaneous with the substantive offense. Additionally, a conspirator need not be a member of the scheme from its inception, but he may join it along the way. *United States v. Jackson, supra* at 69.

▊ In this case as in *Jackson,* there was no direct evidence of the agreement between appellant and Geisel. However, the evidenced conduct of Geisel and appellant's responses were some evidence that both were part of an agreement to sell marijuana. In particular, appellant's acts of setting the price for Geisel, his direction of Geisel to the marijuana, and Geisel's compliance with these directions are evidence of their participation in a common scheme and their concert of action. A reasonable jury could have found the existence of an agreement between them to sell marijuana on that date.

▊ In the cocaine sale, appellant's comment about the deal being "a hundred percent" certainty is some indication of his knowledge of this cocaine transaction and other transactions by Kinloch in the past. Additionally, his act of checking for police

in response to Kinloch's phone call and his subsequent act of weighing the cocaine all tend to show that he was in league with the sellers. While there is some countervailing evidence, the question on appeal is not which has the greater weight but whether rational members could have found the existence of each element of the offense of conspiracy from the evidence beyond a reasonable doubt. *Jackson v. Virginia, supra; see generally* para. 74(a), 1969 Manual and R.C.M. 918(c), 1984 Manual, both *supra.*

## VI

▊ Appellant further asserts that the Court of Military Review erred in refusing to take judicial notice of its own records. That court said in a footnote:

Civilian counsel for appellant, in a lengthy brief and during oral argument before this court, referred to inconsistencies in the testimony of government witnesses by comparing their trial testimony with statements made at the Article 32, UCMJ, 10 U.S.C. § 832, investigation, testimony at the court-martial of a Private Geisel, and comments in the investigating agent's reports. That material, which was not admitted at trial, has not been considered by this court in determining the guilt or innocence of appellant. *United States v. Bethea,* 46 C.M.R. 223 (C.M.A.1973); *United States v. Lanford,* 20 C.M.R. 87 (C.M.A.1955); [7] *United States v. Brundidge,* 20 M.J. 1028 (A.C.M.R.1985).

21 M.J. 1005 n. 1. While judicial notice by appellate courts may be appropriate in some cases, appellant virtually concedes that it was not necessary in this one. *See United States v. Lovett,* 7 U.S.C.M.A. 704, 708, 23 C.M.R. 168, 172 (1957). Evidence concerning Eaves' reliability needed no further clarification or explanation. Moreover, appellant has failed to persuade us that this post-trial effort to enhance the record is for any other purpose than to provide a new basis to overturn these con-

7. Citation to decisions of this Court before April 1975 should include reference to U.S.C.M.A.

victions. *See United States v. Armstrong,* 9 M.J. 374, 375–76 n. 1 (C.M.A.1980).

## VII

■ The final issue is a multi-faceted attack on the Court of Military Review and its opinion in this case. Appellant charges that he was denied due process because it took the court below 13 months after his brief of 117 pages [8] was filed to publish its opinion in this case. He notes that this delay prejudiced him because he was incarcerated during much of this time. Also, he challenges the abbreviated form of this opinion and asserts that it prevented him from fully challenging that court's findings. Lastly, he contends that the opinion as written demonstrates that court's unfamiliarity with the entire record of trial.

Appellant does not support his broad assertion that 13 months is an unreasonable delay in the appellate judicial process. Moreover, the application of such a rule without regard to the complexity of a case in its own right or as developed by counsel would seem most unreasonable. In any event, a specific showing of prejudice, besides confinement, has been required with respect to post-trial delay to justify remedial action. *United States v. Green,* 4 M.J.

203 (C.M.A.1978); *United States v. Johnson,* 3 M.J. 143 (C.M.A.1977); *cf. United States v. Clevidence,* 14 M.J. 17 (C.M.A. 1982). No such prejudice exists in this case.

Turning to the opinion itself, we note that some of the assigned issues were particularly addressed and others were summarily rejected as being without merit. As noted earlier, we are aware of no requirement of law that appellate courts in general or a court of military review in particular must articulate its reasoning on every issue raised by counsel. *Cf. United States v. Hurt, supra,* 9 U.S.C.M.A. 735, 27 C.M.R. 3. Moreover, we are convinced after reading the briefs in this case that appellant was not prevented from fully challenging the decision below. Finally, we are not persuaded that its opinion reflects any unfamiliarity by the court below with the entire record of trial.

## VIII

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

---

8. Oral argument was held on July 16, 1985. Supplemental briefs which were requested by the court, were filed by the defense on July 30, 1985; by the Government on August 12, 1985; and by the defense in reply on August 22, 1985. A motion to file the reply was granted on September 4, 1985. The opinion was filed about 6½ months later.