778

UNITED STATES, Appellee,

v.

Staff Sergeant Robert L. JONES,
238–04–1641, United States
Army, Appellant.

ACMR 9102093.

U.S. Army Court of Military Review.

26 Jan. 1993.

For Appellant: Captain Robin N. Swope, JAGC, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Kenneth T. Grant, JAGC, Captain Louis E. Peraertz, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

OPINION OF THE COURT

CREAN, Senior Judge:

Contrary to his pleas, the appellant was found guilty by a general court-martial consisting of officer and enlisted members of conspiracy to make a false official statement, conspiracy to commit extortion, violation of a general regulation, wrongful appropriation, and extortion (four specifications), in violation of Articles 81, 92, 121 and 127, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 921, and 927 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for one year, and reduction to Private E1.

■ The appellant was an assistant platoon drill sergeant for a basic and advanced individual training unit. Among the offenses charged is that the appellant conspired with a trainee, Private (PV2) Cooley, to extort money from other trainees. The appellant asserts that a finding of guilty of conspiracy to extort with PV2 Cooley cannot be affirmed since there was no agreement between he and PV2 Cooley to extort money. We agree.

On 3 July 1991, a drill sergeant found eight soldiers in the appellant's platoon drinking beer in a barracks stairwell in violation of unit policy. Private Cooley was one of the soldiers caught drinking beer. The next day, 4 July, the senior platoon drill sergeant, with the approval of the company commander, took action against the soldiers for this breach of discipline by "dusting"[1] the soldiers. A few

---

1. "Dusting" refers to the practice of drill sergeants providing extra training to trainees to correct deficiencies. In this case, the drill sergeants imposed extra physical training of sit-ups and push-ups for over one hour and then assignment to work in the dining facility (KP) for the rest of the day.

days later, the appellant and the other assistant platoon drill sergeant talked to the trainees and informed them that they were lucky they were only "dusted" because they could have received Article 15, UCMJ, punishment and fined $150.00.

A few days later, the appellant told a trainee, PV2 Bryson, that he wanted $50.00 from each soldier involved in the beer drinking incident since he had protected them and saved them a bigger fine. He told PV2 Bryson to have PV2 Cooley, who was the platoon "house mouse," [2] collect the money. Private Bryson informed the other trainees "that Drill Sergeant Jones wanted fifty dollars from each of us. He wanted us to pay it to PV2 Cooley and that he wanted Cooley to put it in ... an envelope in the drawer." Private Bryson then testified:

Q. And did you speak with Private Cooley about this as well?

A. Yes.

Q. And did he understand that he was supposed to—or did he seem surprised that he was supposed to be receiving monies and paying monies also?

A. Yes.

Q. What was his reaction?

A. He was upset.

Q. Did he seem to—was he aware that he was also supposed to collect the money?

A. After I told him that he was supposed to give and collect at the same time.

Q. Now, did he know what he was supposed to do with the money or did he tell you that he was aware of what he was supposed to do with the money?

A. No, I had to tell everything. He didn't know anything at all.

Private Cooley testified that the appellant told him that the trainees owed him something for keeping them out of trouble. The appellant did not say to give him money, but that was what PV2 Cooley understood. The appellant then told him that if any trainee brought him any money for anything, he was to put it in an envelope and place the envelope in the desk drawer. He received $50.00 each from Privates Bryson, Smith, and Toller. He also placed his own $50.00 in the envelope.

At common law, the offense of conspiracy only required that two or more persons combine to accomplish a criminal or unlawful act. No overt action was required. The commission of an overt act in furtherance of the conspiracy requirement is a creature of statute. See Charles E. Turcia, *Wharton's Criminal Law* §§ 736 and 737, at 559, (14th ed. 1981); 10 U.S.C. § 881; UCMJ Art. 81. The act of combining with another to commit a criminal offense is a crime because it involves the deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. It is characterized by secrecy, rendering it difficult to detect, requiring more time for its discovery. *United States v. Rabinowich*, 238 U.S. 78, 88, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). Society should punish those that bring about criminal activity. *Scales v. United States*, 367 U.S. 203, 225, 81 S.Ct. 1469, 1484, 6 L.Ed.2d 782 (1960). Conspiracy is designed to punish the activity that makes crime easier to perpetrate and harder to detect. *Woods v. United States*, 240 F.2d 37, 41 (D.C.Cir.), *cert. denied*, 354 U.S. 926, 77 S.Ct. 1385, 1 L.Ed.2d 1438 (1957).

■ The essential element of the offense of conspiracy is that there is an agreement with one or more persons to commit a criminal act. Manual for Courts–Martial, United States, 1984, Part IV, para. 5b(1) [hereinafter MCM]; *United States v. Pretlow*, 13 M.J. 85, 88 (C.M.A.1982); *United States v. Matias*, 21 M.J. 1002, 1004 (A.C.M.R.1986), *aff'd*, 25 M.J. 356 (C.M.A. 1987). The agreement need not be in any particular form or manifested in any formal words. It is sufficient if the minds of

---

2. The "house mouse" is a trainee selected by the drill sergeants to assist them with the platoon paperwork and other administrative duties. In this case, for example, PV2 Cooley testified that one of his duties was to maintain the physical training score cards for the platoon and collect monies from the trainees for various funds. He was selected for this duty because he had three years of college.

the parties arrive at a common understanding to accomplish the object of the conspiracy as shown by the conduct of the parties. MCM, Part IV, para. 5c(2).

Private Cooley first knew of the requirement to pay $50.00 to the appellant from PV2 Bryson. His collection of the money would be normal duties as the "house mouse." Later, the appellant gave him instructions how to handle money if given him by other recruits. Private Cooley, himself, paid his $50.00 to the appellant. There was no agreement between the appellant and PV2 Cooley to extort money from other trainees. The appellant was merely using PV2 Cooley, a victim of the extortion himself, as a conduit to get the money from the other trainees. There was not a meeting of the minds or collaboration to commit a criminal act. Accordingly, we find that there was no agreement between the appellant and PV2 Cooley and hold that there was no conspiracy with PV2 Cooley to extort money from the trainees.

We have carefully considered the other assignments of error raised by the appellant either personally, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), or through counsel, and find them without merit.

The finding of guilty of Specification 2 of Charge I is set aside and Specification 2 of Charge I is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based on the error noted, the entire record, and applying the criteria of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), the sentence is affirmed.

Judge GONZALES and Judge DELL'ORTO concur.