# United States Navy–Marine Corps Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Joshua B. SPEARS**
Aviation Boatswain's Mate Aircraft Handler Airman (E-3)
U.S. Navy
*Appellant*

**No. 202100034**

———————————————

Decided: 27 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Kimberly J. Kelly

Sentence adjudged 8 October 2020 by a general court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of officer and enlisted members. Sentence in the Entry of Judgment: confinement for six months and a dishonorable discharge.

For Appellant:
*Mr. Philip D. Cave, Esq.*
*Mr. Brenner M. Fissell, Esq.*
*Lieutenant Michael W. Wester, JAGC, USN*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

Judge MYERS delivered the opinion of the Court, in which Senior Judge GASTON and Judge HOUTZ joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

MYERS, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of attempted sexual abuse of a child by indecent communication and service discrediting conduct, in violation of Articles 80 and 134, Uniform Code of Military Justice [UCMJ].[1] The convictions arose from digital text communications between Appellant and "Anna," a person claiming to be a 13-year-old child who was actually a detective with the Washington State Patrol's Missing and Exploited Children Task Force.

Appellant asserts five assignments of error [AOE]: (1) the attempt in Charge II, charged as a violation of Article 134, UCMJ, is preempted by the attempt to commit the offense of sexually abusing a child in violation of Article 120b, UCMJ;[2] (2) Charge II fails to state an offense; (3) the military judge abused her discretion by not merging Charges I and II for findings and sentencing; (4) the military judge abused her discretion by not instructing the members on the abandonment defense; and (5) the findings are legally and factually insufficient because the Government did not establish a substantial step for an attempt, failed to overcome the defense of entrapment, and failed to establish that Appellant had the intent to have sexual contact with a child rather than with a roleplaying adult. We find no prejudicial error and affirm.

---

[1] 10 U.S.C. §§ 880, 934.

[2] Having reviewed this AOE, we find it to be without merit. *See United States v. Wheeler*, 77 M.J. 289 (C.A.A.F. 2020); *United States v. Hoffman,* No. 201400067, 2020 CCA LEXIS 198 (N-M. Ct. Crim. App. June 8, 2020) (unpublished); *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

2

# I. BACKGROUND

Using the profile name of "Sexysailor," Appellant messaged "Anna" through a social media website. Anna's profile stated she was a 24-year-old woman, but also that she was young, designed to indicate that she was younger than her profile claimed. Shortly after the two began texting, Anna asked, "How do you feel about younger?"[3] When Appellant asked how young and Anna replied, "13, but mature nd look way older,"[4] Appellant responded, "Nope I've seen way to many date lines."[5] Anna assured him she would not tell anyone, and they continued texting to the point where Appellant inquired, "Have you had sex before?" "Will you help me cheat on my girlfriend?" and "What if you came to my place."[6] Anna reminded Appellant of her age by stating that she was in 7th grade, which halted the conversation for a day.

A few days later, Appellant texted Anna asking what she was doing that night and whether she would like to hang out. When he stated, "I wish you'd come over tonight," Anna reminded him she was 13 and could not drive.[7] He then recommended that they meet at a store near his house, saying they could "watch a movie on [his] bed," but they "don't have to actually watch it."[8] When asked what he meant by that, Appellant stated, "You do know it's illegal."[9] When Anna told him she would not tell anyone, Appellant stated, "Then let's meet up right now."[10] When Anna indicated that she did not want to meet yet, Appellant responded, "Thought you wanted to f[***]."[11] When Anna expressed concern about the size of Appellant's penis, he assured her, "I'll make sure your lubed up," and promised to get condoms.[12]

The two then discussed where to meet. After Anna told Appellant his suggested meeting place was too far to walk, he offered to send her money for an Uber, or alternatively, to take an Uber to pick her up. When he later declined

---

[3] Pros. Ex. 3 at 1.

[4] *Id.* (The grammar, spelling, and punctuation in all quotations are maintained from the original trial exhibits unless otherwise indicated.).

[5] *Id.*

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 5.

3

to take an Uber to pick her up because of cost, she stated she was not comfortable taking an Uber alone. During this conversation, Appellant confirmed to Anna that he had acquired condoms and ultimately said, "Ok I'll do what you want and meet you at the [convenience store] if you send me a picture of you without a shirt on. So [I know] you serious."[13] Anna declined the offer, and Appellant responded with "Tbh I just wanted to fill you full of my cum."[14] Anna then offered to meet at the convenience store, but Appellant told her, "Your to sketchy."[15] When she said she was 13 and unwilling to take an Uber alone to get to him, he told her, "Ok," after which all substantive communication ceased.[16]

After Washington State law enforcement determined that "Sexysailor" was potentially an active duty Sailor, the Naval Criminal Investigative Service opened an investigation and identified "Sexysailor" to be Appellant. In the course of the investigation, records from Uber were subpoenaed which revealed that Appellant created an Uber account on the same day he offered to order Anna a ride to his house.

Appellant was charged under Article 80, UCMJ, with attempting to sexually abuse a child through indecent communications (Charge I) and under Article 134, UCMJ, with attempting to induce and entice a child to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), which conduct was of a nature to bring discredit upon the armed forces (Charge II).

## II. DISCUSSION

### A. Failure to State an Offense

Appellant argues that the Specification of Charge II fails to state an offense. We review such questions of law de novo.[17]

"The military is a notice pleading jurisdiction."[18] "[T]he standard for determining whether a specification states an offense is whether the specification alleges 'every element' of the offense either expressly or by implication, so as

---

[13] *Id*. at 6.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015).

[18] *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011).

4

to give the accused notice and protect him against double jeopardy."[19] In the context of Article 134 offenses, the Court of Appeals for the Armed Forces [CAAF] has stated:

> An accused must be given notice as to which clause or clauses he must defend against. As we explained in the context of a guilty plea: "for the purposes of Article 134, UCMJ, it is important for the accused to know whether [the offense in question is] a crime or offense not capital under clause 3, a 'disorder or neglect' under clause 1, conduct proscribed under clause 2, or all three." . . . This requirement was based on fair notice . . . . Principles of fair notice require the same in contested cases.[20]

The analysis is thus a "three-prong test requiring (1) the essential elements of the offense, (2) notice of the charge, and (3) protections against double jeopardy."[21] Because Appellant challenged the charge and specification at trial, we must "read the wording more narrowly and will only adopt interpretations that hew closely to the plain text."[22] Nevertheless, the test is not whether the specification could have been made more definite and certain.[23]

The Specification of Charge II reads:

> (Crimes and Offenses not Capital—Violation of Federal Law): In that [Appellant], U.S. Navy, USS NIMITZ (CVN 68), on active duty, did, at or near Bremerton, Washington, on or about 2 August 2019, knowingly attempt to induce and entice an individual he believed to be less than 16 years of age, by means or facility of interstate commerce, to wit: a telephone and the internet, to engage in sexual activity which, if undertaken, would constitute a criminal offense under Article 120(b) of the [UCMJ], in violation of 18 U.S. Code Section 2422(b) which conduct was of a nature to bring discredit upon the armed forces.

---

[19] *United States v. Sutton*, 68 M.J. 455 (C.A.A.F. 2010); *see also* Rule for Courts-Martial [R.C.M.] 307(c)(3) (stating a "specification is sufficient if it alleges every element of the charged offense either expressly or by implication . . . .").

[20] *Fosler*, 70 M.J. at 230 (quoting *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008)).

[21] *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994).

[22] *Fosler*, 70 M.J. at 230.

[23] *United States v. Williams*, 40 M.J. 379, 382 (C.A.A.F. 1994).

At trial, Appellant moved to dismiss the Specification, arguing that it failed to state an offense, failed to provide adequate notice, was preempted, and impermissibly omitted the element of specific intent. Appellant also requested and received a bill of particulars describing various actions that, independently and collectively, constituted the alleged inducement and enticement.[24]

The military judge denied Appellant's motion, finding (1) the specification included all essential elements because "attempt" necessarily includes a specific intent to commit the offense; (2) the specification provided proper notice; (3) the failure to specify the intended sexual activity was not fatal; (4) the specification was not preempted by Article 120b, UCMJ; and (5) the bill of particulars was sufficient. She noted that any confusion caused by the parenthetical heading of the Specification—"Crimes and Offenses not Capital—Violation of Federal Law"—concerned whether the Government was proceeding under both a Clause 2 and a Clause 3 theory; however, she found that "there can have been no confusion regarding whether or not the Government by the manner of its pleading was ensuring that a Clause 2 offense was included in the charge."[25] She explained that

> it has always been apparent on the face of the indictment that the accused is subject to the conviction under Clause 2. The Government has now confirmed that they intend solely to proceed on Clause 2, and any previous confusion regarding Clause 3 does not impact the sufficiency of the specification.[26]

Appellant now asserts the specification is defective for four reasons: (1) it does not allege the *mens rea* of the offense; (2) it does not allege the *actus reus* of the offense; (3) it fails to state that the offense is a "crime not capital" and (4) the specification was not consistently relied on to state a theory of liability. We disagree with each of these arguments.

### 1. Whether the specification alleges the mens rea of the offense

Appellant argues that the specification omits an essential element of the offense: the *mens rea*. Although the specification contains the term "knowingly

---

[24] *See* App. Ex. VIII at 2 (alleging that Appellant asked "Anna" to "hang out," to provide her address, to come to his house and meet beforehand, and to watch a movie in his bed; arranged a meeting place; offered her money for an Uber, created an Uber account, and sent an Uber driver to pick her up; and obtained condoms).

[25] App. Ex. X at 7.

[26] *Id.*

attempt," he argues that this was an erroneous statement of the required *mens rea.*

Appellant made the same argument in pretrial motions. The Government averred that it was paralleling 18 U.S.C. § 2422(b) and conceded that the language, "knowingly attempt to induce and entice," required it to prove that Appellant specifically intended to induce and entice a minor under the age of 16— identified in the Bill of Particulars and at trial as "Anna"—to engage in unlawful sexual activity. The military judge agreed and concluded that the specification "alleges every element of an attempted violation of 18 U.S.C. § 2422(b), which conduct was of a nature to bring discredit upon the armed forces."[27]

We agree with the military judge, and hold that the word "attempt" includes the *mens rea* of specific intent. CAAF has interpreted the *mens rea* element of 18 U.S.C. § 2242 to be "*intent* to persuade, induce, entice, or coerce a minor for the purposes of engaging in illegal sexual activity."[28] And the Supreme Court has held that "as used in the law for centuries, [the word "attempt"] encompasses both the overt act and intent elements."[29]

### 2. Whether the specification alleges the actus reus of the offense

Appellant argues that the specification is also defective because it fails to state the *actus reus* of attempt—i.e., the substantial step converting preparatory conduct into an attempt. Distinguishing between "overt act" and "substantial step," he argues the latter is an essential element of an assimilated offense.

At trial, the military judge found that a substantial step was implied by the specification. We agree. As we have previously found, "[f]or attempt offenses, it is not necessary to allege the overt act or the elements of the underlying 'target' offense, so long as there is sufficient specificity to make the accused aware of the nature of the offense."[30] Since a substantial step is simply a type of overt act,[31] it need not be alleged. The fact that the specification charged an offense under Article 134, as opposed to Article 80, does not change this analysis.

---

[27] *Id.*

[28] *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (emphasis added).

[29] *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007).

[30] *United States v. Ortiz*, No. 201800375, 2020 CCA LEXIS 83, *7 (N-M. Ct. Crim. App. Mar. 18, 2020) (unpublished).

[31] *See United States v. Hale*, 78 M.J. 268, 277 ("In other words, Appellant must ha[ve] taken a substantial step—some overt act, beyond mere preparation—toward accomplishing the [offense].").

*3. Whether the specification is fatally flawed because it does not state that the offense is a "crime not capital"*

Appellant argues that the specification's failure to include the phrase "an offense not capital" renders it defective. However, such language is only required for Clause 3 offenses. When alleging a Clause 2 violation, as was done in the present case, "the specification must expressly allege that the conduct was "of a nature to bring discredit upon the armed forces."[32] Because the specification was sufficiently pled as a Clause 2 offense, we reject Appellant's claim.

*4. Whether the specification was not consistently relied on to state a theory of liability*

Appellant argues that the parenthetical language at the beginning of the specification—stating, "(Crimes and Offenses not Capital—Violation of Federal Law)"—"suggested an alternative theory of Clause 2 liability."[33] We disagree.

The military judge specifically identified and resolved this issue prior to trial, providing the following cogent analysis:

> [W]hile there may have been confusion regarding whether or not the Government was charging Clause 3, there can have been no confusion that the Government, by the manner of its pleading, was ensuring that a Clause 2 offense was included in the charge. . . . In other words, it has always been apparent on the face of the indictment that the accused is subject to conviction under Clause 2. The Government has now confirmed that they intend *solely to proceed on Clause 2* and any previous confusion regarding Clause 3 does not impact the sufficiency of the specification.[34]

The members were not misled in this regard since the "cleansed" charge sheet they were provided did not include the parenthetical language and the military judge did not instruct on Clause 3. And Appellant was certainly not misled, in light of the military judge's clear ruling on the matter.

## B. Unreasonable Multiplication of Charges

Appellant asserts the military judge erred in not merging the charges for findings and sentencing. We review a military judge's decision to deny relief

---

[32] *Manual for Courts-Martial* [MCM] pt. IV, para. 91.c.(6)(a).

[33] Appellant's Br. at 28.

[34] App. Ex. X at 7 (emphasis added).

for unreasonable multiplication of charges for an abuse of discretion.[35] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[36]

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges."[37] Military courts review the non-exclusive factors set forth in *United States v. Quiroz*[38] to determine whether there is an unreasonable multiplication of charges. Those factors include (1) whether Appellant objected at trial; (2) whether each charge and specification is aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresent or exaggerate the appellant's criminality; (4) whether the number of charges and specifications unreasonably increase the appellant's punitive exposure; and (5) whether there is any evidence of prosecutorial overreach or abuse in the drafting of the charges.[39]

At trial, Appellant moved to dismiss Charge II and its sole specification (alleging service discrediting conduct by attempting to induce and entice an individual he believed to be less than 16 years of age to engage in sexual activity) as an unreasonable multiplication of Charge I and its sole specification (alleging sexual abuse of a child by indecent communication). He argued that the two charges arose from substantially the same transaction, thus warranting dismissal of Charge II or, in the alternative, merger of the charges for sentencing.

The military judge denied the motion. She found that Appellant's attempted enticement was "separate and apart from the verbal exchanges," such that "each offense was sufficiently distinct."[40] She reasoned,

> [A]s in [*United States v.*] *Campbell*,[41] even if the text communications between [Appellant] and "Anna" are viewed as one transaction, the conversation "implicated multiple and significant criminal law interests." As noted in *United States v. Hoffman*, in

---

[35] *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012).

[36] *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010).

[37] R.C.M. 307(c)(4).

[38] *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

[39] *Id.* at 388.

[40] R. at 594.

[41] *United States v. Campbell,* 71 M.J. 19 (C.A.A.F. 2012).

contrast to UCMJ punitive articles intended to address the communication of indecent language to a child, 18 U.S.C. § 2242(b) "was intended to address those who lure children out to actually engage in illegal sexual activity."[42]

She therefore concluded that Charge I was "intended to address indecent communication to a child," whereas Charge II was "intended to address those who lure children out to actually engage in the sexual activity."[43]

Appellant asserts the military judge erred in her ruling because both charges stem from "a continuum of words alleged to entice a supposed child into sexual conduct—conduct 'united in time, circumstance, and impulse.'"[44] He argues a person cannot induce or entice another to engage in illegal sexual activity without using lewd language; thus, Charge II necessarily begets Charge I. He further argues the military judge misapplied *Campbell*, which found no unreasonable multiplication where charges for false official statement, larceny, and possession of a controlled substance all stemmed from the same events.

We find the military judge did not abuse her discretion. *Hoffman* provides clear guidance in this regard. In *Hoffman*, the appellant was convicted of indecent liberties with a child in violation of Article 120, UCMJ, which was predicated on indecent communications, and also a novel specification of attempted child enticement in violation of Article 134, UCMJ, in a specification very similar to the one at issue in this case. This Court held that although the charges were similar, there was no unreasonable multiplication of charges.[45]

So too here. We agree with the military judge that Charge I was intended to address Appellant's indecent communications with "Anna," whereas Charge II was intended to address his attempt to lure her into engaging in sexual activity. We further agree with her view that "Charge I and its specification, attempted sexual abuse of a child by indecent communication, was complete whether or not the accused engaged in additional, sufficiently concrete efforts to coordinate an actual meeting with 'Anna.'"[46]

Looking at the *Quiroz* factors more specifically, we hold, as we did in *Hoffman*, that the two different specifications do not exaggerate Appellant's criminality. Charge I captures Appellant's communication of indecent language to a

---

[42] App. Ex. XXIX at 3 (quoting *Hoffman*, 2020 CCA LEXIS 198, at *14-15).

[43] R. at 597.

[44] Appellant's Br. at 34 (quoting *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989)).

[45] *Hoffman*, 2020 CCA LEXIS 198, at *53.

[46] App. Ex. XXIX at 4.

person he believed to be a child, and Charge II captures Appellant's attempt to induce and entice a child to meet with him for the purpose of having sex. These are two distinctly separate acts. Thus, while Appellant's punitive exposure was increased by 15 years' confinement, it was not unreasonably so. Charge I exposed Appellant to a maximum punishment of 15 years' confinement and a dishonorable discharge, and Charge II exposed him to the same. Given that Appellant was sentenced to only six months' confinement and a dishonorable discharge, we infer that the difference between these maximum punishments was inconsequential. We also find no evidence of prosecutorial overreach, as Appellant was charged in a manner consistent with existing precedent from this Court, and each charge has distinct elements.

Accordingly, we conclude under *Quiroz* that the military judge did not abuse her discretion in finding the charges were not unreasonably multiplied.

## C. Failure to Instruct on the Abandonment Defense

Appellant's fourth AOE asserts that the military judge erred in declining to provide the voluntary abandonment instruction to the members. We review the propriety of a military judge's instructions *de novo*.[47]

The military judge must instruct on the elements of the offenses and any affirmative, or "special," defenses under R.C.M. 916 that are "in issue."[48] "A matter is 'in issue' when some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose."[49] "It is not necessary that the evidence which raises an issue be compelling," and "the instructional duty arises whenever some evidence is presented to which the fact finders might attach credit if they so desire."[50] "A defense may be raised by evidence presented by the defense, the prosecution, or the court-martial."[51] The military judge has a sua sponte duty to instruct on any defenses

---

[47] *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014).

[48] R.C.M. 920(e).

[49] R.C.M. 920(e), Discussion.

[50] *United States v. Barnes*, 39 M.J. 230, 232 (C.A.A.F. 1994) (citations and internal quotation marks omitted).

[51] R.C.M. 916(b), Discussion.

reasonably raised by the evidence, even if those instructions are not requested.[52] "Any doubt whether an instruction should be given should be resolved in favor of the accused."[53]

"It is a defense to an attempt offense that the person voluntarily and completely abandoned the intended crime, solely because of the person's own sense that it was wrong, prior to the completion of the crime."[54] However, "the voluntary abandonment defense is not allowed if the abandonment results, *in whole or in part*, from other reasons, for example, the person feared detection or apprehension . . . or encountered unanticipated difficulties or unexpected resistance."[55]

Here, while there is ample evidence that Appellant was concerned about getting caught, there is no evidence to support Appellant's claim that he stopped "*solely* because of [his] own sense that it was wrong."[56] As the military judge correctly found,

> there's absolutely nothing in the texts that indicates that [Appellant] had any change of heart or that his conscience . . . basically led him to stop his inducement and enticement. Rather, what it indicates is that he had some concerns about his own vulnerability to potentially getting in trouble for this. And he was nervous about the arrangements that she was suggesting. So he stopped, because he's like, "I'm not going to do that arrangement. I'm not comfortable with it." That is a far cry from "I've had a change of heart and my conscience is kicking in and I no longer think that this is right to speak with a child this way."[57]

Appellant argues that the voluntary abandonment instruction should have been given because he ultimately decided not to meet with Anna. He argues his text to Anna stating, "Your to sketchy," means he found her too problematic, and thus he changed his mind. But as the military judge articulated, voluntary abandonment requires a change of heart, not merely concerns about his own vulnerability to potentially getting in trouble. We agree with the military

---

[52] R.C.M. 920(e); *Barnes*, 39 M.J. at 232-33.

[53] *United States v. Hibbard*, 58 M.J. 71, 73 (C.A.A.F. 2003) (citations and internal quotation marks omitted).

[54] MCM pt. IV, para. 4.c.(4)

[55] *Id*. at para. 4.c.(4) (emphasis added).

[56] *United States v. Feliciano*, 76 M.J. 237, 240 (C.A.A.F. 2017).

[57] R. at 513-14.

judge's finding that there is "nothing in the texts that indicates that he had any change of heart or that his conscience, you know, basically led him to stop his inducement and enticement."[58] We also agree with her interpretation of Appellant's comment of "Your to sketchy" as meaning Appellant was concerned that "Anna" was not real and he would get caught.

Nor was Appellant's purported abandonment "prior to the completion of the crime," as the law requires.[59] Appellant claims the military judge "usurped the function of the members to decide whether Appellant's actions were sufficient evidence of abandonment. Had the instruction been given, the members would have had to decide, beyond a reasonable doubt, the abandonment issue."[60] The evidence reveals, however, that Appellant did not back out of the plan to meet Anna until after he had both offered to pay for an Uber for her to travel to him and established an Uber account to arrange for her to do so. Appellant's argument also neglects the texts in which he repeatedly enticed Anna to meet with him at a particular location. As we discuss more fully below, Appellant did not stop communicating with Anna until after both crimes were already completed. Therefore, it was not error to deny Appellant's request for the voluntary abandonment instruction.

### D. Factual and Legal Sufficiency

We review legal and factual sufficiency de novo.[61] In determining legal sufficiency, we must ask ourselves if, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[62] In doing so, we "draw every reasonable inference from the evidence of record in favor of the prosecution."[63] "[T]he standard for legal sufficiency involves a very low threshold to sustain a conviction."[64]

In determining factual sufficiency, we must be convinced of an appellant's guilt beyond a reasonable doubt after weighing the evidence in the record of

---

[58] R. at 513.

[59] *MCM* pt. IV, para. 4.c.(4).

[60] Appellant's Br. at 42.

[61] Article 66(d), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[62] *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[63] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015).

[64] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019).

trial and making allowances for not having observed the witnesses.[65] We do not presume either innocence or guilt, and instead take "a fresh, impartial look at the evidence" to independently determine whether each element has been satisfied with proof beyond a reasonable doubt.[66] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[67]

The elements of the Specification of Charge II, attempted inducement and enticement of a child in violation of Article 134, UCMJ, are that (1) the accused performed a certain overt act or acts; (2) the overt acts were done with the specific intent to commit the offense set forth in 18 U.S.C. § 2422(b), inducement and enticement of a child to engage in unlawful sexual activity; (3) the acts amounted to more than mere preparation, that is, they were a substantial step and a direct movement toward the commission of the intended offense; (4) such acts apparently tended to bring about the commission of the offense set forth in 18 U.S.C. 2422(b), that is, the acts apparently would have resulted in the actual commission of the offense of inducement and enticement of a child to engage in unlawful sexual activity except for a circumstance unknown to the Appellant which prevented completion of that offense, namely, that the individual with whom Appellant was communicating was not a child under the age of 16 years but an adult undercover police detective; and (5) under the circumstances the accused's conduct was of a nature to bring discredit upon the armed forces.

Appellant asserts the evidence is legally and factually insufficient to sustain a conviction under Charge II because the Government did not establish that Appellant fulfilled a substantial step for an attempt; failed to overcome the defense of entrapment; and failed to establish that Appellant had the intent to have sexual contact with a child rather than an adult roleplayer. We address each claim in turn.

*1. Appellant fulfilled a substantial step.*

A "substantial step" is defined as "more than mere preparation, but less than the last act necessary before actual commission of the crime."[68] "[A] sub-

---

[65] *Turner*, 25 M.J. at 325.

[66] *Washington*, 57 M.J. at 399.

[67] *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[68] *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (quoting *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011)).

14

stantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent."[69] Accordingly, the substantial step must "unequivocally demonstrat[e] that the crime will take place unless interrupted by independent circumstances."[70]

In *United States v. Winckelmann*, CAAF overturned a conviction for attempted enticement of a minor under 18 U.S.C. § 2422(b) because the appellant made no travel plans, there were no concrete plans to meet with the minor, and there was no course of conduct equating to grooming behavior.[71] The court found that chatting the line, "u free tonight," to a 15-year-old boy without more associated planning was insufficient to amount to a substantial step.[72] *Winckelmann* held that "online dialogue must be analyzed to distinguish 'hot air' and nebulous comments from more concrete conversation that might include making arrangements for meeting the (supposed) minor, agreeing on a time and place for a meeting, making a hotel reservation, purchasing a gift, or traveling to a rendezvous point."[73] We reached a similar conclusion in *United States v. Lee*, holding the evidence was legally insufficient to support a conviction for attempted indecent conduct under Article 134, UCMJ, where none of the dialogue between the appellant and the undercover agent ever amounted to more than "hot air."[74]

Here, Appellant's comments amounted to more than "hot air." He invited "Anna" to his house; discussed the sexual acts they would engage in; discussed transporting her to meet him; identified her location and proposed a meeting place and time; offered and began making arrangements for an Uber driver to facilitate their meeting; and obtained condoms, which the context supports he did specifically for their encounter. We find that these acts strongly corroborate the firmness of Appellant's criminal intent and unequivocally demonstrate that the crime would have taken place but for "Anna" (in addition to being an adult police detective) equivocating when he began arranging for an Uber to pick her up and drive her to meet him. It is also clear that Appellant only stopped engaging with Anna because he found her "to[o] sketchy," which we, like the military judge, interpret in context to mean he was guided by a fear of

---

[69] *Id.* (quoting *United States v. Jackson*, 560 F. 2d 112, 116 (2d Cir. 1977)).

[70] *Id.* (quoting *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995)).

[71] *Id.* at 409.

[72] *Id.* at 407.

[73] *Id.* at 407-08 (quoting *United States v. Zawada*, 552 F.3d 531, 534-35 (7th Cir. 2008)).

[74] *United States v. Lee*, No. 202000239, 2022 CCA LEXIS 211, at *14 (N-M. Ct. Crim. App. Apr. 5, 2022).

getting caught, not by a moral aversion to engaging in sexual activities with a child.

*2. The Government overcame the defense of entrapment.*

Entrapment requires that (1) "the criminal design or suggestion to commit the offense originated in the Government;" and (2) "the accused had no predisposition to commit the offense."[75] "The question of predisposition relates to a law-abiding citizen. A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes."[76] A predisposition is demonstrated when "a person accepts a criminal offer without being offered extraordinary inducements," and does not require evidence of an individual's prior criminal activity.[77]

Appellant argues the detective posing as "Anna" performed a "bait and switch" by luring an unsuspecting Appellant away from the adult dating website into private conversations before identifying herself as a 13-year-old. He argues that he had no predisposition to commit offenses like the ones he was convicted of, and therefore his convictions should be overturned.

Looking at the chat transcript, however, it is evident that Appellant began all the sexually charged conversations with Anna. Within an hour of Anna telling him she was 13 years old and in the 7th grade, Appellant asked her, unprompted and unsolicited, if she would help him cheat on his girlfriend and if she had had sex before. He then continued to initiate and engage in sex-related conversations with her until ultimately determining, after her reluctance to take an Uber to meet him, that she was "sketchy."

We find these were not extraordinary inducements. Appellant was merely offered conversation with a purported 13-year-old, and he elevated that conversation to a sexual one, which ended only when she equivocated after he asked her, time and again, to meet him. We therefore conclude that Appellant was not entrapped.

*3. The Government established Appellant had the intent to have sexual contact with a child rather than an adult roleplayer.*

We find no evidentiary support for Appellant's contention that he believed "Anna" was an adult roleplayer, as opposed to a 13-year-old child as she described herself. Throughout the text conversation, Appellant indicated his belief that the person he was talking to was in fact 13 years old, and we find no evidence indicating Appellant believed otherwise.

---

[75] RCM 916(g); *United States v. Howell*, 36 M.J. 354, 358 (C.A.A.F. 1993).

[76] *United States v. Lubitz*, 40 M.J. 165, 167 (C.A.A.F. 1994).

[77] *United States v. Bell*, 38 M.J. 358, 360 (C.M.A. 1993).

*4. Conclusion*

Considering the evidence in the light most favorable to the Prosecution, we find a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence and making allowances for not having observed the witnesses, and recognizing that the evidence need not be free from conflict, we, too, are convinced of Appellant's guilt beyond a reasonable doubt.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[78]

The findings and sentence are **AFFIRMED**.

Senior Judge GASTON and Judge HOUTZ concur.

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[78] Articles 59 & 66, UCMJ.