# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40441**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Zhuo H. ZHONG**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 August 2024

————————————

*Military Judge*: Pilar G. Wennrich (arraignment); Tyler B. Musselman.

*Sentence*: Sentence adjudged 14 December 2022 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Sentence entered by military judge on 1 February 2023: Bad-conduct discharge, confinement for 2 months, and reduction to E-1.

*For Appellant*: Major Kasey W. Hawkins, USAF; Major Frederick J. Johnson, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Major Vanessa Bairos, USAF; Major Olivia B. Hoff, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before RICHARSON, MASON, and KEARLEY, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Judge MASON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of indecent recording in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for two months, and reduction to the grade of E-1.

Appellant raises four assignments of error: (1) whether the findings of guilt to the specification and charge are factually insufficient; (2) whether the record of trial is substantially incomplete; (3) whether the Government's submission of an incomplete record to this court "tolls the presumption of post-trial delay;" and (4) whether the Government can prove the 18 U.S.C. § 922 firearms prohibition is constitutional as applied to Appellant and whether this court has jurisdiction to decide that issue. We have carefully considered issues (3) and (4) and conclude they warrant neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *see also United States v. Vanzant*, ___ M.J. ___, No. ACM 22004, 2024 CCA LEXIS 215, at *23–25 (A.F. Ct. Crim. App. 28 May 2024) (holding the 18 U.S.C. § 922 firearm prohibition notation included in the staff judge advocate's indorsement to the entry of judgment is beyond a Court of Criminal Appeals' statutory authority to review). As to the remaining assignments of error, we find no error that materially prejudiced Appellant's substantial rights.

## I. BACKGROUND

Appellant and TM met through a dating application. In April 2021, while having consensual sex, Appellant recorded TM. Appellant sent TM at least one of those recordings; she asked him to delete it because she did not like the way she looked. Thereafter, Appellant and TM interacted sporadically.

On 31 October 2021—the date of the convicted offense—TM went to Appellant's home in Goldsboro, North Carolina. In a downstairs living area, they ate and watched a movie. They went upstairs to Appellant's room and engaged in consensual sex. While engaged in sex with TM from behind, Appellant used his phone to record TM without her knowledge. TM suspected Appellant had recorded them having sex, and asked Appellant to delete it. She demanded she see him delete it, and he did.

---

[1] Unless otherwise noted, all references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was acquitted of two specifications of wrongful distribution of intimate visual images in violation of Article 117a, UCMJ, 10 U.S.C. § 917a.

TM left Appellant's home and started her drive home. She was upset. She called a friend, then called the police. She told the police that she was having sex with someone and she thought he recorded her, she told him to delete it and he did, and she thought he had other nonconsensual recordings of her.

In November 2021, agents from the Air Force Office of Special Investigations (OSI) interviewed Appellant, after Appellant waived his Article 31, UCMJ, 10 U.S.C. § 831, rights. Appellant admitted he recorded TM during sex without her permission. The OSI coordinated with the local police to obtain a search warrant for Appellant's cell phone and laptop computer. They also received a warrant for Appellant's Snapchat records. The deleted video from October was not recovered.

## II. DISCUSSION

### A. Factual Sufficiency

Appellant asserts two deficiencies of proof. He asserts the evidence did not prove: (1) the recording was of a private area of TM, and (2) Appellant did not have a reasonable mistake of fact as to consent. We find the conviction factually sufficient.

#### 1. Additional Background

TM testified that the videorecording she saw on 31 October 2021 showed her buttocks. On direct examination, TM explained to trial counsel how she discovered the recording after sexual intercourse with Appellant:

> A. Before I left, [Appellant] was laying in the bed, fully immersed in whatever was on his phone screen. And, once again, I just felt something was off. So, before I left—because, I almost walked just straight out of his room. I'm by the door, and I'm just looking at him. He's still looking at his phone. And, I just said, "Delete it." When I said that his whole body froze, he frantically started moving things, and then, I was like, "No, because I want to see you delete it." And I started approaching him and then he just— he said, "It was only on Snapchat." And then by the time I got to him I saw a video—the video of me, from behind, and him deleting.
>
> Q. So, you saw his screen?
>
> A. Yes.
>
> Q. And there was a video on the screen?
>
> A. Yes.
>
> Q. What portions of your body were captured in the video?

A. So, definitely me, in the position I was. So, laying down, so you could see my butt on the screen.

. . . .

Q. But, your buttocks were visible?

A. Mm-hm.

Q. Unclothed or clothed?

A. Unclothed.

On cross-examination, TM testified she saw the video for "[t]hree to four seconds, so like a good amount of time" and could see it "[v]ery clear[ly]." At least four times she stated she recognized her own buttocks in the recording.

The Government introduced Prosecution Exhibit 7, the recording of OSI's interview with Appellant around 23 November 2021. Appellant stated he recorded TM once with her permission, and once without. Regarding the nonconsensual occasion, he stated it was "a couple weeks ago," probably on a weekend. He said he and TM got food, watched a movie, then went upstairs and had sex. He stated that on a whim, mid-sex in the "doggie" position, he picked up his phone and recorded TM for about ten seconds. He thought he used the camera application to record this occasion, and not Snapchat as he had in the past. When agents asked whether TM saw him recording, Appellant answered, "I guess she did" and "afterwards she told me to see it and then told me to delete it." When asked what made him think recording TM on this occasion would be "alright" or if he thought she would not see it, Appellant answered: "I thought, I don't know why, I thought it was alright since we recorded before."

On cross-examination, trial defense counsel asked TM some details leading to her discovery of Appellant recording her. TM confirmed that on 31 October 2021 she and Appellant ate and watched a movie downstairs, then went upstairs and had sex. She confirmed she told OSI that they were in a "doggie-style" position. What she saw and heard during sex suggested to her Appellant had recorded her again. Before she left his room, TM told Appellant to "delete it," to which Appellant reacted "like he was in shock." Appellant said, "It was only on Snapchat." TM demanded she see him delete it, and she did.

The Defense made a motion under Rule for Courts-Martial (R.C.M.) 917 for findings of not guilty to all specifications of the two charges. Pertaining to the offense at issue here, the Specification of Charge II, the military judge asked the Defense:

> [W]hat do you make of [Appellant]'s interview video, in which he tells OSI that he recorded her an additional time, without her permission, that it was a couple of weeks ago, that it was mid-

sex, in the doggie-style position. The recording took 10 seconds, he recorded it on his phone. And then when asked later, "Did she see you," he says, "I guess, because she asked to see it and then asked me [to] delete it."

The military judge expanded on these facts when he denied the Defense's motion in its entirety.

**2. Law**

In order to convict Appellant of indecent recording as charged in this case, the Government was required to prove that at or near Goldsboro, North Carolina, on or about 31 October 2021, without legal justification or lawful authorization: (1) Appellant knowingly recorded the private area of TM; (2) the recording was without TM's consent; and (3) the recording was made under circumstances in which TM had a reasonable expectation of privacy. *See* 10 U.S.C. § 920c(a)(2); *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 63.b.(2). "The term 'private area' means the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple." 10 U.S.C. § 920c(d)(2). "The term 'consent' means a freely given agreement to the conduct at issue by a competent person." *MCM*, pt. IV, ¶¶ 60.a.(g)(7)(A), 63.c.(2)(b). "A recording is a still or moving visual image captured or recorded by any means." *MCM*, pt. IV, ¶ 63.c.(2)(a).

Article 66(d)(1), UCMJ, provides:

(B) FACTUAL SUFFICIENCY REVIEW.

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*). The factual sufficiency standard applies to courts-martial in which every finding of guilty in the entry of judgment is for an offense occurring on or after 1 January 2021. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(e)(2), 134 Stat. 3388, 3612–13 (1 Jan. 2021).

A "specific showing of a deficiency in proof" is not the same standard courts apply for claims of legal insufficiency; that is, an appellant is not required to demonstrate the entire absence of evidence supporting an element of the offense. *See United States v. Harvey*, 83 M.J. 685, 691 (N.M. Ct. Crim. App. 2023), *rev. granted*, ___ M.J. ___, No. 23-0239, 2024 CAAF LEXIS 13 (C.A.A.F. 10 Jan. 2024). Rather, to challenge factual sufficiency, the statute requires an appellant to "identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding." *Id.*

**3. Analysis**

Essentially, Appellant would have us find that TM's testimony about the recording is not credible. Having reviewed TM's testimony and the other evidence supporting the specification, and giving "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence," we decline. Article 66(d)(1)(B)(ii)(I), UCMJ (2024 *MCM*).

The evidence shows Appellant recorded his sexual interaction with TM on 31 October 2021, in his bedroom at his home in Goldsboro, North Carolina, without TM's consent and while she had a reasonable expectation of privacy. TM testified numerous times that the recording showed her buttocks, a private area within the meaning of Article 120c, UCMJ. Appellant admitted to OSI that he recorded TM without her permission around that time and from a sexual position behind TM.[3]

Appellant had no legal justification or lawful authorization for the recording, and did not have a reasonable mistake of fact as to TM's consent. Granted, the evidence indicated Appellant may have believed he had TM's consent to being recorded before he made the recording. He told the agents that he "thought it was alright since [they] recorded before." In a text to TM, Appellant said, "I'm sorry again for doing that without your permission. Guess I thought it was okay since we had before."

---

[3] While not strictly "findings of fact entered into the record by the military judge" as contemplated in Article 66(d)(1)(B)(ii)(II), UCMJ (*Manual for Courts-Martial, United States* (2024 ed.)), the military judge was aware of these facts as evidenced by his explanation for denial of the Defense's R.C.M. 917 motion.

The issue here is whether that belief was reasonable. Appellant argues essentially that because Appellant recorded TM in the past, with her knowledge but without her express consent, it was reasonable to think she consented this time. However, the evidence indicates Appellant recorded TM this time without her knowledge, much less her consent. TM testified about Appellant's furtive behavior after their sexual encounter in October 2021 when she told him to "delete it," which is some indication he knew he made the recording without her knowledge. Additionally, Appellant's own words indicate he recorded TM without her consent or knowledge. When the OSI agents asked whether TM saw him recording, Appellant answered, "I guess she did" and "afterwards she told me to see it and then told me to delete it." We find it was not reasonable for Appellant to believe that because TM may have consented to recording a sexual encounter about six months earlier, he received TM's consent this time.

Appellant repeats many of the same arguments he made before the factfinder. In closing argument, his trial defense counsel laid out five reasons the military judge should find Appellant not guilty of this specification, including, "there's no evidence beyond a reasonable doubt that the 31 October [2021] video was of a private area" and Appellant "had a reasonable mistake of fact as to consent." Again, we give "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence." Article 66(d)(1)(B)(ii)(I), UCMJ (2024 *MCM*). We presume the trial court considered these arguments of counsel, encouraging him to view the testimony and other evidence through their lens. The court is not clearly convinced that the finding of guilty of this specification was against the weight of the evidence; the finding is factually sufficient. Article 66(d)(1)(B)(iii), UCMJ (2024 *MCM*).[4]

## B. Contents of Record

Appellant asserts the "record of trial is substantially incomplete because some attachments to Appellate Exhibit II do not match the descriptions thereof on the record," specifically Attachments 1, 2, and 4 of Appellate Exhibit II. As

---

[4] Citing *United States v. Csiti*, No. ACM 40386, 2024 CCA LEXIS 160, at *2[3] (A.F. Ct. Crim. App. 29 Apr. 2024) (unpub. op.), Appellant asserts that "to set aside a conviction for factual insufficiency, [we] 'must be clearly convinced that the weight of the evidence does not support the conviction beyond a reasonable doubt.'" Even if we applied this factual sufficiency review standard, we would not grant relief as we are convinced of Appellant's guilt of the specification beyond a reasonable doubt.

relief, he requests we remand the case for correction.[5] The Government agrees. We do not.

### 1. Additional Background

Before entering pleas, Appellant moved to admit evidence under Mil. R. Evid 412.[6] The Defense's written motion, marked Appellate Exhibit II, listed five attachments:

> 5 Attachments:
>
> 1. Snapchat Video, dated 8 April 2021, 1 file
>
> 2. Snapchat Video, dated 31 October 2021, 1 file
>
> 3. AFOSI Report of Investigation, undated, 2 pages
>
> 4. AFOSI Interview of Ms. T.M., dated 3 Nov 21, 2 files
>
> 5. AFOSI Interview of SSgt Zhou [sic] Zhong., dated 23 Nov 21, 2 files

The list of attachments did not indicate any attachment was on a disc.[7] Pages 7, 8, 11, and 12 of Appellate Exhibit II are pages that relate to Attachments 1, 2, 4, and 5, respectively, and each state "1 disc," indicating the attachment is digital and not printed.

During the subsequent Mil. R. Evid. 412 hearing, the military judge tried to clarify what evidence was part of the defense motion.

> Let me ask you this, Defense. When you initially filed your motion there were, you had attached that document and provided the [c]ourt a working copy of one—two Snapchat—what's described as two Snapchat videos. So, two separate data files. You also provided the OSI interview of [TM], which was two separate data files, and also the OSI interview of [Appellant], which was two data files.

---

[5] Appellant also notes the charge sheet reflects the convening order as "Special Order-30," when the charges were referred to the court-martial convened in Special Order A-30. He urges us to direct correction of this error in our remand. We have considered this issue and conclude no relief is warranted.

[6] The military judge ordered the filings and transcript relating to this motion sealed. We quote from these sealed materials as necessary to address this claimed error.

[7] The listing for each attachment ended "[transmitted via DoD SAFE]." Department of Defense (DoD) Secure Access File Exchange (SAFE) is a web-based file transfer service.

The Defense replied that Attachment 2 contained the wrong date—it was not 31 October 2021, and Attachments 1 and 2 were on a single disc; they did not state how many data files it contained. Then the military judge asked about "the OSI interview videos," to which the Defense replied, "We do have copies on disc. Those were previously DoD-SAFEd. We do have discs for the court reporter as the originals." The military judge asked how they were marked, and the Defense replied, "[W]e have a disc for Snapchat videos . . . . And then we have [a]ttachments for—numbers 4 and 5 for each, both, this victim and subject interviews." The Defense did not assert how many data files were on the discs for Attachments 4 and 5.

The military judge announced he was "going to try to summarize to clear everything up." He ascertained that Attachments 1 and 2 were on the same disc. He then described Appellate Exhibit II as the defense motion, a 12-page document, dated 22 September 2022, with three disc attachments. He stated, "The first disc contains two Snapchat videos, so that's two data files." He then appeared to read from the attachment listing, stating, "The second disc contains the OSI interview of [TM]. That disc contains two data files. And there is a third disc that is the OSI interview of [Appellant], it is two data files." He also distinguished these attachments from Appellate Exhibit III, supplemental evidence also on a disc. He asked, "Anything, else to correct or clarify, Defense Counsel?" The trial circuit defense counsel—not the defense counsel who filed the defense motion—responded, "No, your Honor." Ultimately, the military judge granted the Defense's motion in its entirety.

In the record of trial, the disc with Attachments 1 and 2 contains three video files—the same as contained in Prosecution Exhibit 6. The disc for Attachment 4 contains only one file, but appears to be a complete OSI interview of TM; the recording lasts 1 hour, 51 minutes, and 48 seconds. The disc for Attachment 5 contains two files, and appears to be a complete OSI interview of Appellant; the first file ends after two hours and the second ends after less than two hours.

A recording of TM's interview with OSI is an attachment to the First Indorsement to the Charge Sheet. It is one file contained on one disc; the recording lasts 1 hour, 51 minutes, and 48 seconds.

**2. Law**

A "complete record of proceedings and testimony" must be prepared when the sentence at a court-martial includes a punitive discharge. Article 54(c)(2), UCMJ, 10 U.S.C. § 854(c)(2); *see also* R.C.M. 1114(a)(1) (requiring a certified verbatim transcript when the judgment entered includes a discharge). The President prescribes the other contents of the record of trial. Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1). In addition to the court-martial proceedings, the

record of trial shall include, *inter alia*, "any appellate exhibits." R.C.M. 1112(b)(6). Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted).

"A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Miller*, 82 M.J. 204, 207 (C.A.A.F. 2022) (alteration omitted) (quoting *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000)). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Henry*, 53 M.J. at 111. We approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted). "In assessing either whether a record is complete . . . the threshold question is 'whether the omitted material was "substantial," either qualitatively or quantitatively.'" *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted).

**3. Analysis**

We begin by noting that the record of trial contains Appellate Exhibit II and its attachments. The issue here is whether Appellate Exhibit II nevertheless is incomplete. Appellant asserts "omission of part or all of three attachments means [Appellate Exhibit] II was not included in its entirety."

From our review of the record, it appears Appellate Exhibit II is complete but mislabeled. The trial defense counsel listed Attachment 4 as containing the victim interview; it does, albeit in one file and not two as stated on the defense motion's attachment listing. Similarly, Attachments 1 and 2 contain Snapchat videos, but in three files and not two as stated. We can discern nothing missing from what the Defense provided in Appellate Exhibit II. Rather, it seems the Defense made an error in its attachment listing regarding the number of files on each disc, and did not correct the military judge when he repeated that error during the hearing.

Appellant asserted this claimed "omission is substantial because it prevents a complete assessment of, inter alia, the Mil. R. Evid. 412 motion, the military judge's ruling, and the performance of trial defense counsel." However, Appellant does not claim Attachment 4 is missing any part of the victim interview, or Attachments 1 and 2 do not contain those Snapchat videos. Moreover, these were attachments to a defense motion on which the Defense prevailed. Although they may be used to critique other aspects of trial defense counsel's performance, they are part of the record for purposes of Mil. R. Evid. 412 evidence. The record of trial here is sufficient for counsel and this court to review Appellant's case on appeal. *See* R.C.M. 1116(b)(1), (A) (directing the certified

record of trial and required attachments be provided to the Court of Criminal Appeals, and a copy to appellate defense counsel). We find no substantial omission relating to Appellate Exhibit II.

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d) (2024 *MCM*). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court