*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOUTZ, DEERWESTER, and MYERS
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Jordy J. DELAFUENTE**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202100080**

———————————————

Decided: 12 September 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Roger E. Mattioli (arraignment and motions)
Michael D. Zimmerman (motions)
Angela J. Tang (trial)

Sentence adjudged 10 December 2020 by a general court-martial convened at Marine Corps Base Quantico, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 48 months,[1] forfeiture of all pay and allowances, and a dishonorable discharge.

———————

[1] Appellant was credited with 275 days of pre-trial confinement.

For Appellant:
*Major Mary Claire Finnen, USMC*

For Appellee:
*Lieutenant Megan E. Martino, JAGC, USN*
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

Appellant was convicted, contrary to his plea, of one specification of sexual assault upon Lance Corporal (E-3) Charlie[2] in violation of Article 120, Uniform Code of Military Justice [UCMJ].[3] Appellant asserts two assignments of error [AOEs]: (1) the evidence does not prove beyond a reasonable doubt that Appellant penetrated Lance Corporal Charlie's vulva with his penis without her consent; and (2) in light of the evidence of Lance Corporal Charlie's relationship with a witness at trial, there was reasonable doubt that Appellant penetrated Lance Corporal Charlie's vulva with his penis without her consent.[4] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant, Lance Corporal Charlie's supervisor, hosted a party at his house, inviting Lance Corporal Charlie and a few others. At the party, alcohol was consumed and most guests played board and card games. Although accounts vary regarding how much alcohol Lance Corporal Charlie consumed, she had some amount of alcoholic seltzer, one shot of fireball whisky, and some

---

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[3] 10 U.S.C. § 920.

[4] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reviewed this assignment of error and find it to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

amount of beer. Witnesses testified that she was clearly intoxicated. As evidence, witnesses found Lance Corporal Charlie asleep, slumped on the toilet with her pants around her knees, arms dangling by her sides, too intoxicated to drive home. The decision was made to put her to bed on an air mattress in Appellant's home, which was set up in an alcove on the second floor. Appellant's pregnant wife escorted Lance Corporal Charlie to the alcove, and Lance Corporal Charlie's next memory was of lying on her side on an air mattress, with her body moving from Appellant's penis "entering and exiting"[5] her vagina from behind. Lance Corporal Charlie told Appellant "no" and "stop" several times, and he responded by telling her she was "fine."[6] Lance Corporal Charlie testified that Appellant stopped after hearing someone on the stairs. "He actually shoved me a little, like, off, of his penis."[7] He adjusted his belt and quickly went downstairs, at which point Lance Corporal Charlie heard Mrs. Delafuente ask Appellant, "[W]hat did you do to her?"[8] Appellant responded, "Nothing."[9]

Lance Corporal Charlie collected her belongings, left the home, and called Corporal Mike as she drove off base. Corporal Mike testified that when they met up after the phone call, she was very distraught and had tear streaks on both cheeks. They met at a hospital close to the base, but were told they would need to go to a different hospital to receive a sexual assault forensic examination [SAFE]. Corporal Mike drove Lance Corporal Charlie to another hospital, where she received a SAFE. While undergoing the SAFE, Lance Corporal Charlie was nauseous, vomited, and was administered an IV and anti-nausea medication.

The SAFE nurse, Ms. Camp, documented Lance Corporal Charlie's injuries and collected DNA, noting fresh lacerations that were the result of "blunt trauma."[10] The collected DNA was tested, and Appellant's DNA, and that of

---

[5] R. at 708.

[6] R. at 709.

[7] R. at 711.

[8] R. at 712.

[9] R. at 712-713.

[10] R. at 420-421, 440-441; Pros. Ex. 4 at 12.

his paternal male relatives, could not be excluded from the DNA profile detected from Lance Corporal Charlie's thigh and external genitalia.[11] The probability of randomly selecting a male individual with the DNA profile from the sample found on Lance Corporal Charlie's thigh and external genitalia from the U.S. population was 1 in 1,154 individuals.

## II. DISCUSSION

### A. Factual Sufficiency

Appellant argues before us that the evidence is insufficient to support a conviction for sexual assault. We review factual sufficiency de novo.[12] In determining factual sufficiency, we must be convinced of an appellant's guilt beyond a reasonable doubt after weighing the evidence in the record of trial and making allowances for not having observed the witnesses.[13] We do not presume either innocence or guilt, and instead take "a fresh, impartial look at the evidence" to independently determine whether each element has been satisfied with proof beyond a reasonable doubt.[14] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[15]

To be found guilty of sexual assault, Appellant must have committed a sexual act upon Lance Corporal Charlie without her consent. A sexual act is defined as penetration, however slight, of the penis into the vulva.[16] Lance Corporal Charlie testified that she was awakened in the early hours of the morning by Appellant penetrating her vulva with his penis. Testimony from Ms. Camp, the SAFE nurse who performed a physical exam on Lance Corporal Charlie several hours after the assault testified that there were injuries to Lance Corporal Charlie's vulva consistent with blunt trauma. Trial counsel's DNA ex-

---

[11] The DNA collected from the thigh and external genitalia of Lance Corporal Charlie was partial F1 Y-chromosome short tandem repeat DNA.

[12] Article 66(d), UCMJ; *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

[13] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

[14] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[15] *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[16] 10 U.S.C. § 920(g)(1).

pert, Ms. India, testified that there was DNA found on Lance Corporal Charlie's labia majora or internal upper thigh[17] that was likely consistent with that of Appellant.

Appellant's defense at trial was that Lance Corporal Charlie fabricated the allegation in order to cover up a consensual sexual relationship she had with Appellant. Lance Corporal Charlie had a fiancé and child at home, and Appellant argued that had her fiancé and the Marine Corps learned of her relationship with Appellant, she would be in trouble with both. Appellant also argued that Lance Corporal Charlie was an untruthful person, which he contended was corroborated by her having been found guilty at non-judicial punishment for four false official statements. Appellant also argued at trial that the DNA and SAFE evidence did not support Lance Corporal Charlie's story. On appeal, Appellant again argues that Lance Corporal Charlie's account is contradicted by, rather than corroborated by, the DNA and SAFE evidence, and that the alleged interaction, as described, is inherently unlikely and Lance Corporal Charlie was not a credible witness. We disagree.

After taking a fresh, impartial look at the evidence, and after weighing the evidence in the record of trial and making allowances for not having observed the witnesses, we, too, are convinced of Appellant's guilt beyond a reasonable doubt.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[18]

The findings and sentence are **AFFIRMED**.

---

[17] Consistent with the practice in the Commonwealth of Virginia, the two swabs taken in this area were rolled along LCpl Charlie's labia major and the internal upper thigh, making it impossible to pinpoint exactly where the DNA was located. R. at 431.

[18] Articles 59 & 66, UCMJ.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court