# United States Navy–Marine Corps Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Gerard CORTEZ**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202300166**

_____

Decided: 19 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Adam J. Workman (Arraignment)
Ryan C. Lipton (Trial)

Sentence adjudged 25 February 2023 by a special court-martial tried at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge alone. Sentence in the Entry of Judgment: reduction to E-2.

For Appellant:
*Lieutenant Commander Benjamin E. Doskocil, JAGC, USN*

For Appellee:
*Major Candace G. White, USMC*

—————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

—————————————

PER CURIAM:

A military judge convicted Appellant, pursuant to his pleas, of two specifications of willfully disobeying a superior commissioned officer in violation of Article 90, Uniform Code of Military Justice (UCMJ), and one specification of violating a lawful general regulation in violation of Article 92, UCMJ.[1] During his plea colloquy, Appellant admitted to initiating contact and communicating with First Lieutenant (1stLt) Echo after he was ordered not to, and fraternization with 1stLt Echo in violation of paragraph 1165, U.S. Navy Regulations.[2]

Appellant asserts two assignments of error (AOEs), which we summarize as follows: (1) the military judge abused his discretion when he found 1stLt Echo a "crime victim" of the offenses and erred when he considered the entirety of the victim's impact statement to include impacts from allegations of uncharged misconduct, and (2) Appellant's adjudged sentence of reduction of four grades to paygrade E-2 was inappropriately severe. We find no prejudicial error and affirm.[3]

———————————————————

[1] 10 U.S.C. §§ 890, 892 (2019). Appellant did not enter into a plea agreement. This case is before us on direct appeal submitted by Appellant pursuant to Article 66(b)(1), UCMJ. We have jurisdiction to review this case under Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A); *United States v. Parino-Ramcharan*, 84 M.J. 445 (C.A.A.F. 2024*); United States v. Hirst*, No. 202300208, 2024 CCA LEXIS 372 (N-M. Ct. Crim. App. Sep. 4, 2024); *United States v. Vanzant*, 84 M.J. 671 (A.F. Ct. Crim. App. 2024); *United States v. Mieres*, 84 M.J. 682 (C.G. Ct. Crim. App. 2024).

[2] All names in this opinion, other than Appellant, counsel, and the military judge, are pseudonyms.

[3] We have reviewed Appellant's second AOE and find it to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

## I. BACKGROUND

Appellant, a Staff Sergeant (E-6), and 1stLt Echo served in the same unit. Appellant was the administrative chief and 1stLt Echo was the Adjutant and his Officer-in-Charge. Appellant and 1stLt Echo began a personal relationship between March and September 2022. This relationship between the two formed the basis for Charge II, violation of Article 92 (fraternization).

On or about 9 September 2022, 1stLt Echo reported to her Acting Commanding Officer, Major (Maj) Bravo, that she and Appellant had engaged in an intimate relationship over the past several months. She further reported feeling like she was in an unsafe working environment and was receiving threats from Appellant.[4] After receiving this information, Maj Bravo issued Military Protective Orders (MPOs) to both Appellant and 1stLt Echo. 1stLt Echo was ordered not to have any contact with Appellant and his daughter.[5] And, likewise, Appellant was ordered not to have contact with 1stLt Echo or her daughter.[6]

Despite the issuance of the MPOs, Appellant sent an email to 1stLt Echo. This communication directly violated the lawful order of his superior officer, Maj Bravo, not to initiate contact.[7] This conduct formed the basis of the Additional Charge, alleging a violation of Article 90, UCMJ.

During the weekend of 16-18 September 2022, and again in violation of the 9 September 2022 MPO that was still in place, 1stLt Echo and Appellant communicated and spent time together at Appellant's home.[8] Additionally, on 2 October 2022, Appellant communicated with 1stLt Echo via a social media application, that he may be suicidal and stated he may "not be able to do this anymore."[9] The conduct over the weekend of 16-18 September and on 2 October 2022, formed the basis of the sole specification of Charge I, a violation of Article 90, UCMJ.

---

[4] R. at 166.

[5] App. Ex. IX at 9-11.

[6] App. Ex. IX at 7-8.

[7] R. at 116.

[8] R. at 129-131.

[9] R. at 132-133. The military judge confirmed that Appellant did not request an R.C.M. 706 evaluation.

During the Government's presentencing case, a patrol officer for the local police department testified regarding his response to a domestic disturbance in progress at Appellant's house on 18 September 2022. The officer observed "[Appellant] on top of [1stLt Echo] on a couch. He was straddling her and holding her arms down with his hands. And he ordered him to get off."[10] The patrol officer further testified he took a photo of 1stLt Echo and wore a body camera when he responded to the report at Appellant's house. The photo and video camera footage were admitted.[11]

Before the plea hearing, trial defense counsel filed a motion to preclude 1stLt Echo from receiving consideration as a "crime victim" under Article 6b, UCMJ.[12] Trial defense counsel argued that the facts show that 1stLt Echo was a willing participant in both the MPO violations and in the fraternization offense. Victims' Legal Counsel responded in writing,[13] and the motion was argued.[14] The military judge denied the motion and found 1stLt Echo to be a "crime victim" and determined she could, "offer a statement under [Rule for Courts-Martial] R.C.M. 1001(c)(4) or (c)(5)."[15]

The military judge provided his decision orally:

> [T]here's sufficient evidence that the victim suffered emotional and physical harm as a direct result of the accused alleged commission [of a crime], particularly, of Charge I and Charge II…, the Court finds that, but for the communication alleged to have been committed in Charge I, and but for the relationship to have existed in Charge II, [1stLt Echo] would not have been harmed.
>
> However, recognizing that R.C.M. 1001(c)(2)(A) specifically defines a crime victim for purposes of sentencing as a victim who has suffered direct, physical, emotional or pecuniary harm as – as a result of the commission of an offense of which the accused was found guilty. This ruling is condition[ed] upon the Court's accepting the accused plea of guilty and finding the accused

---

[10] R. at 177.

[11] Pros. Exs. 4 (Photo of 1stLt Echo), 5 (body camera video), and App. Ex. IV (Transcription of body camera footage).

[12] App. Ex. VIII at 2-3.

[13] App. Ex. XII.

[14] R. at 17-36.

[15] R. at 35.

guilty of these offenses. For all these reasons, the defense motion
is denied.

Before 1stLt Echo read her unsworn victim impact statement,[16] trial defense counsel objected to a statement regarding the amount of punishment,[17] because under R.C.M. 1001(c), the victim cannot comment on sentence or punishment.[18] Additionally, trial defense counsel requested the military judge, "give this statement the appropriate weight it deserves, in light of the fact there is no supporting evidence or anything in the record to support any of the claims of medical or mental health issues that [1stLt Echo] is making in this statement." The Victims' Legal Counsel modified the statement.[19] Defense counsel maintained the objection. The military judge overruled the objection.[20] Additionally, the military judge stated, "for the record, I will give the entirety of the statement the weight that it indeed deserves and will note that this change alleviates the Court's concern that it is seeking to offer any recommendation with respect to a specific punishment [to] be imposed."[21]

Additional facts necessary to resolve Appellant's AOEs are discussed below.

## II. DISCUSSION

**The military judge did not abuse his discretion by finding 1stLt Echo a crime victim under Article 6b and R.C.M. 1001(c)(2)(A) and considering the entirety of 1stLt Echo's modified victim impact statement.**

Appellant argues the military judge abused his discretion by finding 1stLt Echo a crime victim and by considering 1stLt Echo's unsworn statement that

---

[16] App. Ex. XIV.

[17] R. at 198. "No amount of punishment will ever be enough from what he has done to me and the damage it has caused my physical, emotional, and psychological health."

[18] The Court is interpreting the previous version R.C.M. 1001(c) because the new R.C.M 1001(c) is only applicable to cases where all offenses occurred after 27 December 2023. And under the new R.C.M. 1001(c), a victim may, in non-capital cases, "recommend a specific sentence." See R.C.M. 1001(c)(3), *Manual for Courts-Martial*, *United States* (2024 ed.).

[19] R. at 200-01. Specifically, Victims' Legal Counsel modified the statement from "[n]o amount of punishment will ever be enough" to "[n]othing will ever be enough."

[20] R. at 202.

[21] R. at 202.

included impacts from uncharged misconduct of which Appellant was not convicted. Specifically, Appellant asserts that certain portions of the statement exceeded the scope of what is permissible under R.C.M. 1001(c).

### *1. Law and Standard of Review*

Article 6b, UCMJ, defines a victim as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under" the Code.[22] An Article 6b victim has the right to be reasonably heard at sentencing hearing relating to the offense.[23] R.C.M. 1001(c) "is the President's implementation of and guidance for the application of Article 6b."[24] R.C.M. 1001(c)(2)(A) defines "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty."

A "crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at the presentencing proceeding relating to that offense."[25] In non-capital cases, the "'right to be reasonably heard' means the right to make a sworn statement, an unsworn statement, or both."[26] Interpretation of R.C.M. 1001(c), is a question of law we review de novo.[27]

The victim's statement "may only include victim impact and matters in mitigation" and, under the previous version of the rule, "may not include a recommendation of a specific sentence."[28] "We review a military judge's decision to allow a victim to present an unsworn victim impact statement for abuse of discretion."[29] "The abuse of discretion standard is a strict one, calling for more

---

[22] 10 U.S.C. § 806b(b).

[23] 10 U.S.C. § 806b(a)(4)(B).

[24] *United States v. Miller*, 82 M.J. 788, 790 (N-M. Ct. Crim. App. 2022).

[25] R.C.M. 1001(c)(1), *Manual for Courts-Martial, United States* (MCM) (2019 ed.).

[26] R.C.M. 1001(c)(2)(D), MCM (2019 ed.).

[27] *United States v. Cunningham,* 83 M.J. 367, 371 (C.A.A.F. 2023) *cert. denied* 144 S. Ct. 1096 (2024) (citing *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F 2022)).

[28] See R.C.M. 1001(c)(3), MCM (2019 ed.).

[29] *Miller*, 82 M.J. at 791 (citing *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019) (recognizing that victim impact statements are not evidence but applying the same standard of review to their admission)).

than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[30]

A victim impact statement is not evidence.[31] Nor does it constitute witness testimony.[32] It is not admitted into evidence by the Government, but "introduced by the victim[.]"[33] Accordingly, "the question is not whether the information contained in the victim impact statement is 'relevant,' or even whether a Mil. R. Evid. 403 balancing test is required[.]"[34] Instead, the concern is "whether the statement is within the proper 'scope' of R.C.M. 1001A, or its successor, R.C.M. 1001(c)."[35]

Pursuant to R.C.M. 1001(c)(3), the contents of victim impact statements may only include matters in mitigation and "victim impact," with the latter defined to include "any financial, social, psychological, or medical impact on the crime victim *directly relating to or arising from* the offense of which the accused has been found guilty."[36] "A victim's statement should not exceed what is permitted under R.C.M. 1001(c)(3)," and "[u]pon objection by either party or *sua sponte*, a military judge may stop or interrupt a victim's statement that includes matters outside the scope of R.C.M. 1001(c)(3)."[37] "While the military judge is the gatekeeper for unsworn victim statements, an accused nonetheless has a duty to state the specific ground for objection in order to preserve a claim of error on appeal."[38]

---

[30] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

[31] *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021).

[32] *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018).

[33] *In re A.J.W.,* 80 M.J. 737, 744 (N-M. Ct. Crim. App. 2021) (citing *Hamilton*, 78 M.J. 335).

[34] *In re A.J.W.*, 80 M.J. at 744.

[35] *Id.*

[36] R.C.M. 1001(c)(2)(B) (emphasis added). Pursuant to R.C.M. 925, Appellant was sentenced under "the Rules for Court Martial in effect prior to December 28, 2023." It is, however, worth noting for practitioners that the 2024 edition of the Rules for Court Martial has eliminated the word "directly" for purposes of R.C.M. 1001(c).

[37] R.C.M. 1001(c)(5)(B), Discussion.

[38] *Tyler*, 81 M.J. at 113.

Although "directly relating to or arising from the same offense" is not defined in R.C.M. 1001(c), we have previously looked to how the President defined admissible "evidence in aggravation" in R.C.M. 1001(b).[39] Within this context, uncharged misconduct may be offered in aggravation if it "is directly related to or resulting from the offenses of which the accused has been found guilty."[40] This type of evidence is admissible when it demonstrates "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community, [e.g.], the servicemember's home."[41] Such evidence demonstrates "the true impact of the charged offenses on the [victims]."[42]

Logic supports applying this definition to an unsworn victim impact statement. Rule for Courts-Martial 1001(c) provides that the victim of a crime "has the right to be reasonably heard" concerning "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." As we recently stated in *United States v. Campos*, "[t]his right would prove illusory if it did not include the ability to describe circumstances necessary for the sentencing authority to understand the true impact of the crime on the victim."[43]

Furthermore, judges are "presumed to know the law and apply it correctly."[44] Absent clear evidence to the contrary, we will assume the military judge did not sentence Appellant for any improper basis.[45]

---

[39] *United States v. Campos*, No. 202200246, 2024 CCA LEXIS 87, *26 (N-M. Ct. Crim. App. Feb. 29, 2024), *rev. granted*, _ M.J. _, No. 24-0138/MC, 2024 CAAF LEXIS 469 (C.A.A.F., Aug. 15, 2024) (mem.).

[40] R.C.M. 1001(b)(4).

[41] *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990); *see also United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001) ("when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under RCM 1001(b)(4).").

[42] *Nourse*, 55 M.J. at 231.

[43] 2024 CCA LEXIS 87 at *25-26.

[44] *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citation omitted).

[45] *Id.*

*2. Analysis*

We agree with the military judge that 1stLt Echo met the definition of crime victim and therefore had the right to be reasonably heard during Appellant's sentencing hearing. We disagree with Appellant that the Marine Corps is the sole victim of orders violation offenses. We are certainly not suggesting that every Marine in an unduly familiar relationship with another Marine meets the definition of a crime victim.[46] In our view, the military judge must make an individualized decision about each person who seeks to exercise her right to be reasonably heard as a crime victim. In this case, the military judge correctly concluded when he found that but for Appellant's communication with her in violation of the MPO and unduly familiar relationship with her, 1stLt Echo would not have been harmed.

We now turn to the contents of the victim impact statement. In *United States v. Hamilton,* the Court of Appeals for the Armed Forces determined the military judge abused his discretion by not adequately distinguishing between evidence admitted in aggravation and an unsworn victim impact statement.[47] But the circumstances in the present case are substantially different. In *Hamilton*, the victims' statements were offered and admitted as prosecution exhibits.[48]

Here, 1stLt Echo made her unsworn victim statement in-person and after the Government's case in aggravation. Moreover, the statement was correctly marked as an appellate exhibit, rather than a prosecution exhibit.[49] Most importantly, the military judge cited the rule, R.C.M. 1001, and noted on the record that he would give the "entirety of the statement the weight that it indeed deserves."[50]

And it was proper to consider it under the rule and not as evidence. We agree with the military judge that the matters contained in 1stLt Echo's unsworn statement of emotional and physical harm were a direct result of Appellant's continuous course of conduct of violating the MPO and fraternizing with

---

[46] *United States v. Da Silva*, No. ACM 39599, 2020 CCA LEXIS 213, *49-50 (A.F. Ct. Crim. App. Jun. 25, 2020) (unpublished).

[47] 78 M.J. at 338-40.

[48] *Id*. at 338-39.

[49] Appellate Ex. XIV.

[50] R. at 202. *See also Tyler*, 81 M.J. at 112.

1stLt Echo. Specifically, the military judge found that, but for the communication in violation of the MPO and fraternization, 1stLt Echo would not have been harmed.[51] The uncharged misconduct she described was a continuation of the violations he committed. The harm described by 1stLt Echo occurred one day before and 8 days following Appellant's violation of the MPO.

But even were we to determine otherwise by finding parts of the victim impact statement were outside the scope of R.C.M. 1001(c) and those matters were improperly considered by the military judge, we are confident this did not impact the military judge's sentencing decision. The military judge properly identified that 1stLt Echo's victim impact statement would be given the weight it deserves. The victim impact statement was before a military judge alone. Military judges are presumed to know the law and to follow it absent clear evidence to the contrary.[52] Finally, there is no indication in the record that the statement affected the military judge or impacted Appellant's sentence. And the military judge specifically did not consider the victim impact statement suggesting a particular punishment.[53] Therefore, we are confident the military judge did not consider 1stLt Echo's statement *as evidence.*

What evidence the military judge did consider more than explains the sentence. The Government presented a strong case in aggravation: a photo of 1stLt Echo with a cut on her face and the body camera video of a civilian police officer responding to a domestic disturbance call, where Appellant was on top of 1stLt Echo on a couch, straddling her and holding her arms down.[54] In contrast, Appellant offered mostly service records and a few character letters. We are therefore convinced that, if the military judge did improperly consider parts of 1stLt Echo's statement, it did not result in prejudice to Appellant.[55]

---

[51] R. at 35-36.

[52] *United States v. Mason,* 45 M.J. 483, 484 (C.A.A.F 1997).

[53] R. at 202.

[54] Pros. Ex. 4. and 5.

[55] *See United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) ("[The] [a]ppellant did not suffer material prejudice to a substantial right…[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary…Finally, there is no indication in the record that the statement affected the military judge or impacted Appellant's sentence.").

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[56]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[56] Articles 59 & 66, UCMJ.