# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40741**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Julius VONGPHACHANH**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 May 2026

———————————

*Military Judge*: Tiny L. Bowman (pretrial motion); Matthew P. Stoffel (arraignment and pretrial motions); Joshua D. Rosen (trial).

*Sentence*: Sentence adjudged 27 June 2024 by GCM convened at Nellis Air Force Base, Nevada, and the Municipal Courthouse in North Las Vegas, Nevada. Sentence entered by military judge on 22 July 2024: Bad-conduct discharge, confinement for 360 days, forfeiture of all pay and allowances, and a reprimand.

*For Appellant*: Captain Joyclin N. Webster, USAF; Dwight H. Sullivan, Esquire.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MCCALL, and KUBLER, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge MCCALL and Judge KUBLER joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one specification of wrongfully and willfully discharging a firearm under circumstances such as to endanger human life, and one specification of unlawfully carrying a concealed weapon, both in violation of Article 114, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 914.[1] Appellant elected to be sentenced by the military judge, who adjudged a bad-conduct discharge, confinement for 360 days, forfeiture of all pay and allowances, and a reprimand. The convening authority took no action on the findings or sentence, and provided the language of the reprimand.

Appellant raises five assignments of error on appeal: (1) whether his conviction for unlawfully carrying a concealed weapon is factually insufficient; (2) whether the military judge plainly erred by providing the court members an improper findings instruction; (3) whether the convening authority erroneously failed to act on Appellant's request to commute the adjudged forfeitures; (4) whether Appellant is entitled to relief for unreasonable post-trial delay; and (5) whether Appellant's convictions and sentence should be set aside because the Constitution requires a unanimous verdict.

We have carefully considered issue (5) and find it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *see also United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023) (holding an accused servicemember does not have a constitutional right to a unanimous court-martial verdict), *cert. denied*, 114 S. Ct. 1003 (2024).

We find no relief is warranted with respect to issues (1) and (2). As to issue (3), we find Appellant is entitled to some relief, and we take corrective action in our decretal paragraph. In light of our disposition of issue (3), we defer consideration of issue (4) pending the completion of our Article 66, UCMJ, 10 U.S.C. § 866, review.

## I. BACKGROUND

Appellant's court-martial resulted from an incident in which a civilian, AM, was fatally shot during a birthday party in the back yard of a residence in North Las Vegas, Nevada. Appellant was present at the party and was suspected of firing the fatal shot.

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

In the summer of 2022, Appellant was stationed at Nellis Air Force Base, Nevada. He lived in an off-base apartment. Appellant was friends with a group of civilian young men who also lived in the local community. For reasons that are not entirely clear from the record, in the early summer of 2022 there existed a feud of sorts between members of Appellant's friend group and another group of young men that included AM.

One night in early July 2022, a young woman, JT-C, hosted a party at her family's home in North Las Vegas, Nevada, to celebrate her birthday. JT-C, attempting to avoid violence, asked her boyfriend JA-L to check bags and purses for guns when guests arrived at the party, which he did for a period of time. AM, who had been a friend of JA-L, attended the party, where a large crowd gathered in the back yard.

Appellant and several of his friends also arrived at the party. At trial, one of Appellant's friends, IM-A, testified he went to the party separately from Appellant, but he saw Appellant there. IM-A testified he did not see a weapon on Appellant when Appellant was at the party.

At trial, one of AM's friends, WC-Q, testified he and AM were toward the rear of the back yard when four individuals approached them. WC-Q recognized two of them—friends of Appellant who went by the nicknames "Jay" and "Ace"—who proceeded to lift up their shirts to display concealed firearms. Shortly thereafter, a fistfight broke out between this group and WC-Q and AM.

Soon after the fight started, someone fired two shots from a firearm. The person who fired these shots was never identified. After the shots were fired, people began to flee the area, either through the gate to the front of the property, into the house, or over the walls surrounding the back yard. WC-Q testified that he escaped over one of the walls. As he was going over the wall, he heard two more shots, after which he saw someone in the back yard fall to the ground. At trial, Appellant's friend IM-A testified he also began to run after the first two shots, and he heard additional shots after that, although he did not see a shooter. Among the witnesses who testified at trial, there was general agreement that at least four shots were fired in all, and possibly more, although no one identified a shooter. Appellant's friends "Jay" and "Ace" were not called as witnesses at trial.

At some point after the shots began, AM was struck in the back of the head by a bullet. He was found lying toward the rear of the back yard. AM fell into a coma and died within two days.

After the shots were fired and the party broke up, Appellant and some of his friends met up at a nearby parking lot. From there, they went to Appellant's apartment. While they were there, "Jay," "Ace," and Appellant took a

photograph of themselves holding firearms in front of a mirror with their faces covered. This photograph was introduced at trial.

Civilian police conducted an investigation of the incident, which led them to interview Appellant. A recording of the interview was entered in evidence at Appellant's trial. During the interview, Appellant eventually admitted he was at the party at JT-C's house. He stated he saw a fight break out, which caused people to gather around, after which "shots went off and everybody started running." Appellant stated that after people started running, as he stood facing the rear of the back yard he fired two shots "into the sky" with a handgun that he brought to the party. This weapon was a so-called "ghost gun" without a serial number, which Appellant had assembled himself using parts he had ordered. Appellant stated that he did not fire at anyone, but shot over the heads of the people in the back yard. During the interview, Appellant eventually claimed he later disassembled the handgun, but civilian police later recovered the weapon from a separate incident in North Las Vegas not involving Appellant. Ballistics testing matched two shell casings recovered from JT-C's back yard to this weapon.

Civilian authorities ceded jurisdiction over Appellant to the Air Force. Appellant was eventually placed into pretrial confinement and charged with the murder and involuntary manslaughter of AM, in violation of Articles 118 and 119, UCMJ, 10 U.S.C. §§ 918, 919, as well as one specification each of wrongfully and willfully discharging a firearm under circumstances such as to endanger human life, and unlawfully carrying a concealed weapon in violation of Article 114, UCMJ. The court members found Appellant not guilty of the homicide charges, but guilty of the Article 114, UCMJ, offenses.

## II. DISCUSSION

### A. Factual Sufficiency of Conviction for Unlawfully Carrying a Concealed Weapon

#### 1. Law

We are neither required nor empowered to review the factual sufficiency of the evidence unless an appellant both (1) asserts an assignment of error and (2) shows a specific deficiency in the proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024). The current version of Article 66(d)(1)(B), UCMJ, states:

> (B) FACTUAL SUFFICIENCY REVIEW.
>
> > (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact

upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (*Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)). This factual sufficiency standard applies to courts-martial in which every finding of guilty in the entry of judgment is for an offense occurring on or after 1 January 2021. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116–283, § 542(e)(2), 134 Stat. 3388, 3612–13 (2021).

"[T]he requirement of 'appropriate deference' when a [Court of Criminal Appeals (CCA)] 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . will depend on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130 (third and fourth alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.* at 131.

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at 132. First, this court must decide that the evidence, "as the CCA has weighed it, does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, this court "must be clearly convinced of the correctness of this decision." *Id.*

In order to convict Appellant of unlawfully carrying a concealed weapon as alleged in Specification 2 of Charge I, the Government was required to prove: (1) that Appellant carried a certain weapon, to wit: a handgun, concealed on or about his person; (2) that the carrying was unlawful; and (3) that the weapon was a dangerous weapon. *See* 10 U.S.C. § 914(d); *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 52.b.(7). "A weapon is concealed when

it is carried by a person and intentionally covered or kept from sight." *MCM*, pt. IV, ¶ 52.c.(4)(a).

### 2. Analysis

As described in the Background *supra*, Appellant admitted to police that he carried a handgun while he was at JT-C's birthday party. In addition, at trial the Government introduced evidence that carrying a concealed firearm without a permit was illegal in Nevada, and that Appellant did not have a Nevada permit. On appeal, Appellant does not suggest the Government failed to disprove he was lawfully entitled to carry a concealed weapon on the night in question. However, Appellant contends his conviction for unlawfully carrying a concealed weapon is factually insufficient because the Government introduced insufficient evidence the handgun was concealed.

As an initial matter, we find Appellant has made a sufficiently "specific showing of a deficiency of proof" to enable this court to review the factual sufficiency of the findings. *See* 10 U.S.C. § 866(d)(1)(B)(i); *Harvey*, 85 M.J. at 130. Accordingly, we address Appellant's argument below.

As Appellant notes, the only witness who testified that he saw Appellant at the party was Appellant's friend IM-A.[2] When trial counsel asked IM-A, "[D]id you see a weapon on [Appellant]," IM-A responded, "No, I hadn't, not that night." Appellant contends IM-A is not a credible witness. Appellant notes IM-A was "Jay's" brother, and IM-A also testified "Jay" did not have a gun that night. However, this testimony about "Jay" was contradicted by AM's friend WC-Q, who testified both "Jay" and "Ace" lifted up their shirts to reveal concealed handguns when they approached him and AM. Appellant also suggests Appellant may have been openly carrying his weapon and IM-A simply failed to observe it in the dark back yard.

Considering the totality of the evidence, we are not clearly convinced the Government failed to prove Appellant concealed his weapon that night. Although IM-A, as "Jay's" brother and Appellant's friend, perhaps had some incentive to downplay any awareness that they were armed on the night of the fatal shooting, the court members heard and observed the testimony of the witnesses and concluded Appellant did carry his weapon concealed. We find some deference to this determination is appropriate.

In addition, considering the evidence as a whole, and applying common sense and an understanding of the ways of the world, we find credible IM-A's testimony that Appellant was at the party and not openly carrying his

---

[2] During his police interview, Appellant did not describe where or how he was carrying his handgun at the party before he fired it.

handgun. JT-C testified she asked her boyfriend, JA-L, to check guests' bags and purses for guns when the first guests were arriving at the party. Although at some point JA-L discontinued these inspections, this evidence suggests that Appellant and his friends openly bringing weapons to the party would not have been welcome or socially acceptable. This is particularly so given that, unlike AM, there was little evidence Appellant and his friends were socially connected to the hosts of the party. JT-C's boyfriend JA-L testified he and AM had been good friends in the past. In contrast, a reasonable factfinder could conclude Appellant and his friends "Jay" and "Ace" were not friends of the party hosts. In addition, the Government introduced text messages between Appellant and "Jay" on the night of the party indicating they anticipated a possible confrontation with AM that night. Moreover, WC-Q's testimony indicated "Jay" and "Ace" were keeping guns hidden under their shirts until they approached AM. It stands to reason their friend, Appellant, would have also kept his weapon concealed, at least for some period of time, for similar motivations.

Accordingly, we are not clearly convinced Appellant's conviction for unlawfully carrying a concealed weapon is against the weight of the evidence.

## B. Findings Instruction

### 1. Additional Background

At the conclusion of the evidence, the military judge discussed his draft findings instructions with counsel. With respect to Specification 2 of Charge I, alleging Appellant unlawfully carried a concealed weapon, the military judge proposed to instruct the court members that "[t]he carrying of a concealed weapon may be inferred to be unlawful in the absence of evidence to the contrary. However, the drawing of this inference is not required."[3] The military judge drew the parties' attention to this proposed instruction in the following exchange:

> [Military Judge]: A couple questions for the counsel, at least things to point out. You'll notice in Specification 2 of Charge I, it's really the last line regarding that specification on page two. I just ended at "However the drawing of this inference is not required." I did consider specifying some specific evidence to include the testimony of the sergeant that testified[4] and

---

[3] *See United States v. Lyons*, 33 M.J. 88, 89 (C.M.A. 1991); *Military Judge's Benchbook*, Dept. of the Army Pamphlet 27-9 at 1311–12 (29 Feb. 2020).

[4] The Government called a civilian police sergeant to testify to the effect that Appellant did not have a permit to carry a concealed weapon in Nevada.

> [Appellant's] father[5] but I did not. Do either parties request further articulations of evidence that might go to drawing of the inference?
>
> [Trial Counsel]: No, Your Honor.
>
> [Trial Defense Counsel]: No, Your Honor.

The military judge discussed other instructions with counsel, including defense requests for certain novel instructions, but there was no further discussion of a permissive inference instruction with respect to Specification 2 of Charge I. At the conclusion of the discussion, the military judge asked, "Are there any other instructions that the parties request?" Counsel for both parties replied, "No, Your Honor."

The military judge read the permissive inference instruction to the court members as drafted. At the conclusion of the military judge's findings instructions, he asked, "Do counsel have any additional objections to the instructions given or requests for additional instructions?" Counsel for both parties again replied, "No, Your Honor."

**2. Law**

In general, "[f]ailure to object to an instruction or to an omission of an instruction before the members close to deliberate forfeits the objection." Rule for Courts-Martial (R.C.M.) 920(f).

Appellate courts review forfeited issues for plain error. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (additional citation omitted). Plain error occurs where "(1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted).

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotation marks and citation omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Unlike forfeiture, "[w]hen an issue is waived, 'it is extinguished and may not be raised on appeal.'" *United States v. Harborth*, 85 M.J. 469, 475 (C.A.A.F. 2025) (quoting *Gladue*, 67 M.J. at 313). Whether an appellant has waived or forfeited an issue is a legal question we review de novo. *United States v. Schmidt*, 82 M.J. 68, 72 (C.A.A.F. 2022) (citations omitted).

---

[5] The Defense called Appellant's father to testify to Appellant's date of birth.

In *Davis*, the United States Court of Appeals for the Armed Forces (CAAF) addressed whether a trial defense counsel's statement to the military judge that the defense had no objections and no request for additional instructions waived an alleged instruction error on appeal. 79 M.J. at 330–32. In *Davis*,

> the military judge explained to counsel for both parties the instructions that he chose to give, including the consent element instruction. Afterwards, the military judge asked whether the defense had any objections or requests for additional instructions. After consulting with the assistant defense counsel, the defense counsel answered, "No changes, sir." After the military judge granted a finding of not guilty on one of the specifications and marked the instructions as an appellate exhibit, he again asked the defense if there were any objections to the findings instructions. The defense counsel replied: "No, Your Honor."

79 M.J. at 330. The CAAF held that by "affirmatively declin[ing] to object to the military judge's instructions and offer[ing] no additional instructions," the appellant "waived all objections to the instructions, including in regards to the elements of the offense." *Id*. at 331 (citations omitted).

In *United States v. Lyons*, the CAAF's predecessor, the United States Court of Military Appeals (CMA), held that with respect to the offense of unlawfully carrying a firearm in violation of Article 134, UCMJ, 10 U.S.C. § 934, "unlawfulness may be inferred, absent some evidence to the contrary, from the fact of the [concealed] carrying." 33 M.J. 88, 91 (C.M.A. 1991). This principle was subsequently incorporated into the *Military Judge's Benchbook* as a potential instruction in appropriate cases. *See, e.g.*, *Military Judge's Benchbook*, Dept. of the Army Pamphlet 27-9 at 952–53 (10 Sep. 2014).

In *United States v. Caswell*, an unpublished opinion, a panel of this court declined to apply the permissive inference recognized in *Lyons* in its review of a January 2023 prosecution for unlawfully carrying a concealed weapon in violation of Article 114, UCMJ. No. ACM 23035, 2025 CCA LEXIS 98, at *6–25 (A.F. Ct. Crim. App. 17 Mar. 2025) (unpub. op.). In reaching this conclusion, the panel cited, *inter alia*, two significant "intervening events" since the CMA decided *Lyons*: (1) "Congress's choice to move this offense from Article 134, UCMJ, to Article 114, UCMJ," a change which went into effect 1 January 2019; and (2) "new Second Amendment[6] case law" from the United States Supreme Court, specifically *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Caswell*, unpub. op. at *25. In doing so, the panel "acknowledge[d] [it] d[id] not have the authority to

---

[6] U.S. CONST. amend. II.

opine or to conclude whether our superior court's holding in *Lyons* remains good law after the Supreme Court's ruling in *Bruen*, only to determine if it is directly applicable to the case at bar." *Id.* at *21 n.18.

"An appellant gets the benefit of changes to the law between the time of trial and the time of his appeal." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019) (citations omitted). However, rulings subsequent to an appellant's trial that do not "create new law" may not excuse waiver. *See Davis*, 79 M.J. at 332.

### 3. Analysis

Appellant contends that in light of *Caswell*, the military judge's instruction regarding the permissive inference that Appellant's concealed carrying of a weapon was unlawful absent evidence to the contrary was plainly erroneous. We find Appellant waived the issue, and therefore no relief is warranted.

As an initial matter, we note a significant distinction between how the issue of the permissive inference arose in *Caswell* and how Appellant raises it here. Unlike Appellant's case, *Caswell* involved a trial by a military judge alone; it did not involve members instructions on findings. *See Caswell*, unpub. op. at *1. The relevant question before the panel in *Caswell* was whether this court would apply the *Lyons* permissive inference to its review of the sufficiency of the evidence.[7] The panel concluded it would not apply it, *inter alia* for reasons related to Congress's relocation of the offense from Article 134, UCMJ, to Article 114, UCMJ, and because of intervening Supreme Court precedent, particularly *Bruen. Id.* at *25. Thus, *Caswell* did not present a question of waiver or forfeiture.

In Appellant's case, we find *Davis* controlling with respect to waiver. As in *Davis*, trial defense counsel not only failed to object to the instruction Appellant challenges on appeal, but affirmatively denied the Defense had an objection. *See Davis*, 79 M.J. at 330–31. Indeed, more so than in *Davis*, the military judge in Appellant's case specifically drew the parties' attention to the instruction in question.

Appellant contends waiver should not apply because "the law had changed while Appellant's case was pending on appeal," referring to this court's opinion in *Caswell*. However, we are not persuaded *Caswell* represents a "new rule of law." *See Davis*, 79 M.J. at 331. As an opinion of a Court of Criminal Appeals, *Caswell* did not and could not purport to overrule *Lyons. See United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) ("[C]ourts 'must strictly follow the

---

[7] The appellant in *Caswell* also challenged the constitutionality of Article 114, UCMJ, as it applied to him, but the panel effectively did not reach a decision on that point. *See Caswell*, unpub. op. at *6, 8–9, 32–33.

decisions handed down by higher courts' (vertical stare decisis)."); *Caswell*, unpub. op. at \*21 n.18 (disclaiming the conclusion that *Lyons* is not good law after *Bruen*); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). As an *unpublished* opinion, *Caswell* is not even binding precedent for this court. *See* A.F. CT. CRIM. APP. R. 30.4(a) ("Published opinions serve as precedent . . . .").

Moreover, the panel in *Caswell* drew its conclusions regarding the applicability of the *Lyons* permissive inference based on developments in the law that occurred *before* Appellant's court-martial, specifically Congress moving the offense from Article 134, UCMJ, to Article 114, UCMJ, and the Supreme Court's decisions in *Heller* and *Bruen*. The fact that *Heller* and *Bruen* occurred before Appellant's trial is significant because to the extent those opinions changed law of consequence to Appellant's decisions, they did so prior to his trial, not after. This court's opinion in *Caswell* may represent persuasive authority that future litigants may draw on, but in terms of binding authority, *Caswell* did not alter the state of the law. Accordingly, we find waiver applies, and Appellant is not entitled to relief.

Assuming for purposes of analysis that Appellant merely forfeited rather than waived the alleged instructional error, we also find no plain error. The military judge's instruction was consistent with the CMA's longstanding precedent in *Lyons*, which the CAAF has not renounced. The future of the permissive inference of unlawfulness might be questionable in light of *Bruen*, but we do not find the military judge *clearly or obviously* erred by continuing to apply *Lyons*, where the instruction was unchallenged. *See Robinson*, 77 M.J. at 299.

## C. Action on Request to Commute Forfeitures

### 1. Additional Background

The military judge sentenced Appellant to a bad-conduct discharge, confinement for 360 days, forfeiture of all pay and allowances, and a reprimand. Because Appellant was sentenced to confinement for more than six months, as well as a punitive discharge, automatic forfeiture of all pay and allowances would also apply during the period of confinement by operation of law. *See* 10 U.S.C. § 858b(a).

After Appellant's court-martial, pursuant to R.C.M 1106, trial defense counsel submitted matters for the convening authority's consideration before the convening authority decided whether to take action on the sentence pursuant to R.C.M. 1109. The opening paragraph of trial defense counsel's memorandum requested the convening authority "*waive* [Appellant's] adjudged

forfeitures of 'all pay and allowances' in accordance with Article 60a, UCMJ and R.C.M. 1109(c)(5)." (Emphasis added). In the "Law and Analysis" section of the memorandum, trial defense counsel again cited R.C.M. 1109(c)(5) and stated, "it is appropriate to *commute* the portion of the sentence that calls for forfeiture of all pay and allowances." (Emphasis added). The memorandum cited Appellant's one-year-old son as one of the reasons why commutation of adjudged forfeitures was appropriate. It stated, *inter alia*, that Appellant had been the "primary financial provider" for his son, and that the adjudged forfeitures "only go[ ] to harm his son," but did not refer to Appellant's son as a "dependent." At the conclusion of the memorandum, trial defense counsel wrote, "[Appellant], by and through counsel, respectfully request[s] that pursuant to Article 60, [sic] UCMJ and R.C.M. 1109(c)(5) the portion of his sentence which calls for forfeiture of all pay and allowances be *waived*." (Emphasis added).

The convening authority issued his decision on action in Appellant's case on 11 July 2024. The convening authority stated in his memorandum he took "no action on the sentence in this case." He characterized Appellant's request for sentence relief as follows:

> [Appellant] requested waiver of the adjudged forfeitures for the benefit of his dependent child. I deny the request because in accordance with Article 58b and R.C.M. 1103(h)(1)[,] only automatic forfeitures may be waived. To the extent [Appellant's] submission of matters may be construed as a requested waiver of automatic forfeitures for the benefit of his dependent child, the waiver request is hereby denied.

The Defense did not move to correct an error with respect to the convening authority's decision on action.

### 2. Law

A convening authority may reduce, commute, or suspend a sentence of forfeiture of pay and allowances. *See* 10 U.S.C. § 860a(b)(1); R.C.M. 1109(c)(5)(C). "[T]o commute a sentence means 'a reduction of penalty,' not 'merely a substitution.'" *United States v. Carter*, 45 M.J. 168, 170 (C.A.A.F. 1995) (citation omitted).

A court-martial sentence that includes either confinement for more than six months, or confinement for six months or less and a punitive discharge, "shall result in the forfeiture of pay, or of pay and allowances, due that member during any period of confinement or parole." 10 U.S.C. § 858b(a). However, "[i]n a case involving an accused who has dependents," the convening authority may waive these "automatic forfeitures" for a period not to exceed six months for the benefit of the accused's dependents. 10 U.S.C. § 858b(b).

R.C.M. 1106 permits an accused to "submit matters to the convening authority for consideration in the exercise of the convening authority's powers under R.C.M. 1109 . . . ." The convening authority is required to consider the accused's timely written submissions. *See* R.C.M. 1109(b)(1); *see also* 10 U.S.C. § 860a(e)(1) ("In accordance with rules prescribed by the President, in determining whether to act under this section, the convening authority shall consider matters submitted in writing by the accused . . . .").

In general, "[t]he standard of review for determining whether post-trial processing was properly completed is de novo." *United States v. Miller*, 82 M.J. 204, 207 (C.A.A.F. 2022). "R.C.M. 1104(b)(2)(B) provides that either party may file a post-trial motion within five days of receiving the convening authority's action to address an asserted error in the . . . action." *Id.* "An accused's failure to file a post-trial motion within the allotted time forfeits his or her right to object to the accuracy of the convening authority's decision on action, absent plain error." *Id.*; *see also United States v. McAlhaney*, 83 M.J. 164, 167 (C.A.A.F. 2023) (quoting *Miller*, 82 M.J. at 207). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Miller*, 82 M.J. at 207–08 (citing *United States v. McPherson*, 81 M.J. 372, 377 (C.A.A.F. 2021)). To meet this burden in the context of a convening authority's discretionary decision on action, regardless of whether the alleged error is preserved or is reviewed for plain error, an appellant "must make 'some colorable showing of possible prejudice.'" *Id.* at 208 (quoting *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005)).

### 3. Analysis

Appellant contends the convening authority erroneously "failed to act" on Appellant's request to commute the adjudged forfeitures. Appellant concedes the Defense's R.C.M. 1106 memorandum "imprecisely" referred to waiver while requesting clemency. However, he contends the repeated references to the convening authority's clemency power and the statement that commutation of forfeitures was appropriate make it clear Appellant sought an actual reduction in the sentence, specifically the adjudged forfeitures. Appellant therefore requests the case be remanded for new consideration of his R.C.M. 1106 submission.

In response, the Government concurs with the convening authority's interpretation of the R.C.M. 1106 submission:

> Appellant did not request a commutation of sentence – a reduction in penalty. Instead, Appellant requested that "the portion of his sentence which calls for forfeiture of all pay and allowances be waived" for the benefit of his dependent child . . . .

> *Nowhere in Appellant's submission of matters did he request a commutation.* As a result, *the convening authority did not consider commuting a part of Appellant's sentence.*

(Emphasis added).

We agree with Appellant and find the convening authority plainly erred by failing to recognize Appellant requested an exercise of the convening authority's clemency power to reduce the sentence under Article 60a, UCMJ, and R.C.M. 1109, and not merely waiver pursuant to Article 58b, UCMJ. Appellant's clemency request cited Article 60a, UCMJ, and R.C.M. 1109, and did not refer to Article 58b, UCMJ. Although the request referred to Appellant's support for his son, it conspicuously did not refer to Appellant's son as his "dependent." The memorandum did request "waiver" of the adjudged forfeitures at two points, but even if the convening authority took that term strictly at face value—in spite of the references to Article 60a, UCMJ, and R.C.M. 1109—the memorandum also stated the convening authority should "commute" the adjudged forfeitures under R.C.M. 1109(c)(5). We find the Government's assertion that "nowhere" did Appellant request commutation is incorrect.

To be clear, we do not hold a convening authority must explain a decision not to take action on a sentence. The convening authority's plain error was not in that he failed to state why he took no action on the sentence. The error lies in what the convening authority did say, which indicates he did not appreciate, and therefore did not appropriately consider, the nature of Appellant's clemency request. The Government's answer essentially doubles down on this error and flatly states the convening authority *did not consider* granting Appellant the relief he requested—commutation of his adjudged forfeitures.

With respect to prejudice, our superior court has held that due to the discretionary nature of a convening authority's decision to act on a sentence, the low "colorable showing of possible prejudice" standard applies, whether we review de novo or for plain error. *See Miller*, 82 M.J. at 208. We find such a colorable showing here. The decision on action memorandum indicates, and the Government's brief drives home, the convening authority did not consider Appellant's clemency request for what it was. The Government has not offered any proof of what the convening authority would have done had he correctly appreciated the nature of the request. Appellant was entitled to consideration and an informed decision on his request. Under these circumstances, we will not simply assume the convening authority would have denied it. Furthermore, we agree with Appellant that he might benefit from relief from the adjudged forfeitures to some extent even if the automatic forfeitures remain in place— for example, during any interim between Appellant being released from confinement and being placed an appellate leave, or to receive pay and allowances

during a period of accrued leave after being ordered onto appellate leave. Accordingly, we find remand appropriate.[8]

### III. CONCLUSION

As entered, the findings are correct in law and fact,[9] and are **AFFIRMED**. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2024 *MCM*). The record of trial is **REMANDED** to the convening authority for a new decision on action on Appellant's submission of matters dated 7 July 2024, consistent with this opinion, and a new entry of judgment by the military judge. Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66, UCMJ, 10 U.S.C. § 866.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[8] We note the convening authority did not have the power to modify the findings. *See* 10 U.S.C. § 860a(a)(1)(B); R.C.M. 1109(b). Accordingly, we also find it appropriate to affirm the findings of guilty before remanding the record for further consideration of Appellant's request for sentence relief.

[9] Appellant did not request factual sufficiency review of his conviction for the specification of wrongfully discharging a firearm in violation of Article 114, UCMJ. Accordingly, this court determined the finding of guilty for this specification is correct in law, without conducting a factual sufficiency review. *See* 10 U.S.C. § 866(d)(1)(B), UCMJ (2024 *MCM*).